| ¶ MURRAY, Judge.
Cadette Carter, and her minor daughter, Cherise, each have appealed the judgment of the trial court granting the petition of Maurice Williams, Cherise’s alleged biological father, to annul a consent judgment of March 14, 1990, and disavowal of paternity. Maurice Williams answered the appeal requesting that, in addition to the reasons stated for the judgment by the trial court, the consent judgment should be annulled on the basis of fraud.
FACTS AND PROCEDURAL HISTORY:
Cadette Carter gave birth to Cherise on April 19, 1989. It is undisputed that Cadette, who was married to Herbert Sonny Carter when Cherise was conceived, engaged in sexual relations with Maurice Williams. Herbert Carter was identified as Cherise’s father on the child’s birth certificate.[1]
On September 13, 1989, Ms. Carter filed a Petition for Child Custody and Support alleging that Mr. Williams, who had informally acknowledged Cherise, was the child’s natural and biological father. This petition, however, did not seek Lto have paternity established. The record does not indicate that Mr. Williams answered the petition.
*1155 Eventually, Mr. Williams and Ms. Carter agreed that Ms. Carter would be designated as the primary custodial parent, with permanent, sole custody of Cherise, subject to Mr. Williams’ right, as the child’s “natural and biological father,” to reasonable visitation. Mr. Williams agreed to pay Ms. Carter, on behalf of Cherise, $300.00 on January 19, 1990, and $150.00 on the first and fifteenth of each month thereafter, and to maintain medical insurance for Cherise through his employer. Ms. Carter agreed that no arrearages for child support would be paid.
A consent judgment in accordance with that agreement, prepared by counsel for Ms. Carter, was signed by Cadette Carter and Maurice Williams. A note beneath Mr. Williams’ signature advises that “As of today Feb. 16 I representing [sic] myself.” [2] The trial court signed the consent judgment in chambers on March 14, 1990.
On March 23, 1990 Ms. Carter filed a motion to accumulate past due child support, for contempt, attorneys fees and an increase in child support to $412.00 per month. A rule to show cause on that motion was scheduled for April 23, but continued several times. Ultimately, an amended consent judgment was signed on | ¡¡October 24, 1990. By agreement of the parties, Mr. Williams was ordered to pay an additional $85.00 per month to Ms. Carter for medical insurance until January 1991, at which time he would place “his daughter” on his medical policy with his employer and be permitted to discontinue this additional payment.
Over the years numerous rules were filed seeking to change the support obligation. Ms. Carter sought to increase and Mr. Williams sought to reduce the amount of child support. By judgment of June 11, 1991, the child support Mr. Williams was to pay was increased to $605.25 per month. On December 30, 1992, Mr. Williams was adjudged in contempt of court and ordered to pay $600.00 in past due child support plus attorneys fees of $300.00. On March 24, 1993, a consent judgment was signed increasing the child support to be paid by Mr. Williams to $625.00 per month, retroactive to October 1992.[3]
On December 8, 1993, after having paid support for Cherise Carter for approximately three years, Mr. Williams filed a “Rule for Paternity Blood Testing,” petitioning the court to order that Ms. Carter and Cherise submit to blood tests to determine paternity in accordance with La.Rev. Stat. 9:396, et seq. Ms. Carter filed an exception of no cause of action on the grounds that Mr. Williams had acknowledged Cherise and entered into a consent judgment agreeing to pay support for her benefit. According to notations on one copy of that rule in the record, the matter was continued at least twice, and “submitted on memos” as of 14April 26, 1994. On October 20, 1994, the exception of no cause of action was overruled and the rule for paternity testing granted.
Specimens were obtained and the testing was performed. A report dated December 13, 1994, issued by the Associate Director of the Department of Paternity Evaluation of Roche Biomedical Laboratories in Burlington, North Carolina, advised that DNA analysis of specimens taken from Cherise and Cadette Carter and Maurice Williams excluded Maurice Williams as Cherise Carter’s biological father. Based on the analysis, the report concluded that Mr. Williams “cannot be *1156 the biological father of the child, Cherise Carter.”
On January 23, 1995, because the blood tests had determined that he was not Cherise’s biological father, Mr. Williams filed a Petition to Annul the consent judgment of support of March 14, 1990, as well as the judgment that increased the support award to $625.00. The petition also prayed that Ms. Carter and her attorney be sanctioned because these judgments had been obtained through fraud or ill practice, “having been procured by the prejudiced [sic] testimony of Cadette Carter as stated in her petition for child support.”
On January 27, 1995, Ms. Carter filed a motion asking the court to order a second set of blood tests. Ms. Carter alleged that she was concerned about the validity of the original blood tests because of statements made to her by Mr. Williams. Also, because she had “maintained an exclusive sexual relationship” with Mr. Williams, the test reports excluding him as Cherise’s father also caused her to question the validity of the testing. On February 25, 1995, over Mr. | ¡Williams’ objection that additional testing would only prolong this litigation, the court granted Ms. Carter’s motion, ordering that she pay for the second blood testing. The court also ordered that the additional testing be completed as expeditiously as possible.
On April 24, 1995, Mr. Williams filed a pleading styled “Petition to Annul Three Prior Judgments” in which he once again asked that the two previous support judgments be declared null. He also requested that the judgment ordering the second set of blood tests be vacated and set aside because almost two months had expired since the testing was ordered, and Ms. Carter had neither scheduled the additional testing nor tendered payment for same. The rule on this motion, originally set for May 9, 1995, was continued due to the illness of Ms. Carter’s attorney.
After a hearing on June 16, the trial court ordered that Mr. Williams, Ms. Carter and Cherise make themselves available for a second series of blood testing at a reputable laboratory in the New Orleans area. The testing was to be completed, at Ms. Carter’s expense, within thirty days of the hearing; if the testing was not completed within this time, the judgment ordering additional testing would be set aside, and the prior test results would govern further proceedings. Finally, the court ordered that a hearing to establish Cherise’s paternity be held within fifteen days of the receipt of the results of the additional testing by either party.
The court directed Mr. Williams’ attorney to prepare a judgment in accordance with the decision rendered in open court on June 16. On June 27, 1995, this attorney forwarded to Ms. Carter’s attorney a copy of the judgment he j Jiad prepared for approval. The record contains a letter from Mr. Williams’ attorney to the court, dated July 24, 1995, in which he advised that Ms. Carter’s attorney had not responded to his request regarding the judgment nor communicated with him about same. The writer, therefore, requested that the court sign the judgment. Apparently in response to this letter, the judgment was read and signed by the court on July 27, and entered in the record on July 28, 1995.
Interestingly, on July 12, 1995, after the proposed judgment had been sent to her for review and signature, but before it actually was signed by the court, counsel for Ms. Carter filed a motion requesting that Mr. Williams be ordered to comply with the prior order. She alleged that Mr. Williams had been ordered to appear “simultaneously” with her and Cherise for testing, but had appeared at an earlier time, without notice to her. The rule on this motion was set for hearing on September 25, 1995, more than two months after it was filed.
On September 13, 1995, Ms. Carter moved to enroll new counsel to represent her. Also on that date, nine months after Mr. Williams filed his petition to annul, Ms. Carter excepted to same, moved to *1157 have an attorney appointed to represent Cherise in connection with that action, and filed a motion for income assignment, for past due child support, executory judgment, contempt and attorney fees. The rule on the exceptions and the motions was scheduled for January 8,1996.
On September 25, 1995, Mr. Williams filed a petition to disavow paternity and to annul the judgment of March 14, 1990, as well as the judgment increasing the support award to $605.25. The basis of this petition was the August 16, 1995 report of GenTest Laboratories, which, as had the DNA testing by Roche Biomedical a year earlier, eliminated Mr. Williams as Cherise’s biological father.
|7On October 4, 1995, Ms. Carter excepted to the second petition to annul and the petition to disavow, and, once again, moved the court to appoint an attorney to represent her minor child. Hearing on this exception and motion was set for January 8, 1996, the date on which the earlier exceptions and motion were set for hearing.
On January 12, 1996, the court signed a judgment regarding the matters heard on January 8. Mr. Williams was ordered to begin paying the previously ordered $625.00 per month child support on the 15th of each month, beginning January 15, 1996. If he failed to do so, Ms. Carter was to apply to the court for a wage assignment. Ms. Carter’s motion for contempt, attorney’s fees and executory judgment was continued pending resolution of the petition for nullity and the petition to disavow. All claims by Mr. Williams against counsel for Ms. Carter in the petition to annul were dismissed with prejudice. The court appointed an attorney to represent the interest of the minor child, Cherise Carter. The order provided that one-third of the costs and fees of that attorney were to be paid for by Ms. Carter and two-thirds by Mr. Williams. The hearing on all exceptions was continued. It was to be reset as expeditiously as possible once the attorney appointed to represent Cherise had enrolled.
On January 11, 1996, Maurice Williams moved that the hearing to establish paternity be held on or before January 16. He also requested that Ms. Carter’s forma pauperis affidavit be rescinded, that the portion of the January 8 judgment ordering him to pay child support be stayed or, alternatively, that the support paid by him be held in “escrow by the court” until the paternity issue was decided, and that Ms. Carter be charged with attorney’s fees and costs. On January 12, 1996, the |8court signed an order setting the hearing on Mr. Williams’ motion for March 20,1996.
On January 16 Ms. Carter filed a pleading bearing the caption “Dilatory and Peremptory Exceptions to Motion for Expedited Hearing on Paternity.” She also raised dilatory and peremptory exceptions to Mr. Williams’ petition to annul that had been filed on January 23,1995.
On January 17, 1996, Ms. Carter obtained an Income Assignment Order (Immediate), presumably because Mr. Williams did not make his child support payment on January 15 pursuant to the judgment of January 12,1996.
On January 19, 1996, Mr. Williams filed a “Motion to Terminate Child Support Payments” alleging that Ms. Carter’s actions had delayed a ruling on the issue of Cherise’s paternity for over a year, causing him and his family financial hardship. Alternatively, Mr. Williams sought a reduction of the child support. The hearing on this motion was scheduled for March 20,1996.
On February 12,1996, Ms. Carter filed a pleading bearing the caption “Dilatory and Peremptory Exceptions to Motion to Terminate Child Support Payments.”
On April 19, 1996, counsel appointed to represent Cherise excepted to Cadette Carter’s failure to join Herbert Carter in her original petition for child support, alleging that he was Cherise’s biological and legal father, and, therefore, a necessary party to that action. On that same date, the court ordered that “the plaintiff join *1158 Herbert Carter as a necessary party to this litigation” no later than April 19, or “plaintiffs demand [would] be dismissed at her costs.” On April 24, 1996, Ms. Carter filled a supplemental petition joining Herbert Carter as an | ¡¡additional defendant, and requesting judgment against both Mr. Williams and Mr. Carter, decreeing each to be responsible for Cherise’s support.
Following a hearing on May 17, 1996, a judgment granting Mr. Williams’ motion to reduce support was signed on July 15, 1996. The judgment ordered that the support be reduced to $537.89 per month, retroactive to January 19, 1996, the date the motion to reduce was filed, to be paid in equal installments of $268.93 on the 1st and 15th of each month. Mr. Williams filed a motion for new trial as to this judgment on July 22. Hearing on his motion was scheduled for September 10,1996. On September 13, 1996, the court granted the new trial, and amended the judgment to provide that Mr. Williams pay support of $427.20 per month, payable in equal installments of $213.60 on the 1st and 15th of each month, retroactive to January 19, 1996.
On October 15, 1996, Ms. Carter once again excepted to the petitions filed by Mr. Williams on January 23, April 24, and September 25, 1995. On that date she also filed an answer to each of Mr. Williams’ three petitions, and moved that the matters be set for trial. She also moved to sever all claims against Herbert Carter, alleging that she had been unable to obtain service of her original and amending petitions on him.
On October 17, 1996, Ms. Carter filed a pleading captioned “Motion for Income Assignment, for Past Due Child Support, for Executory Judgment and for Contempt and Attorney’s Fees.” The motion specifically requested that Mr. Williams be “incarcerated in jail for his wilful [sic] neglect to pay child support.” The hearing on this motion was scheduled for December 16, 1996.
|inOn October 22, 1996, Ms. Carter obtained an order directing Mr. Williams’ employer to pay $227.20 per month to Cherise via a wage assignment, which, in essence, would gave Mr. Williams a credit of $200.00 per month for the retroactive support reduction ordered on September 13.
On October 24, 1996, the court signed an order setting the hearing on “all exceptions” as well as trial on the merits of each of Mr. Williams’ petitions for December 17,1996.[4]
On December 10, 1996, Ms. Carter moved to dismiss the rule for past due support and contempt, which was scheduled for hearing on December 16, reserving her right to bring it at another time.
On December 16, Ms. Carter filed another pleading captioned “Peremptory Exceptions.” This pleading asserted the same exceptions raised in the pleading she had filed on October 15.
On January 27, 1997, the attorney appointed to represent Cherise once again excepted to the failure to join Herbert Carter as a necessary party. On January 30,1997, the trial court once again ordered Ms. Carter to amend her original petition to join Herbert Carter.[5] On motion of Cherise’s attorney, the hearing and trial were In continued to February 13 because Mr. Carter, who had been “recently joined in this matter” had not been served.[6]
On February 3, 1997, the trial court appointed a special process server to obtain service on Herbert Carter. The Sher *1159 iff s returns in the record document that Mr. Carter was served personally with the supplemental and amending petition on February 5 and February 13, 1997. However, Mr. Carter did not hire counsel to represent him until May 8, 1997, four days before the scheduled hearing.
On May 9, 1997, counsel for Mr. Carter filed a motion to continue the trial scheduled on May 12, 1997, because she was not retained to represent Mr. Carter until May 8. The mover advised the court that Cadette and Cherise Carter did not oppose the continuance, but that Mr. Williams did. On May 21, 1997, the trial court granted the motion to continue and reset the trial for June 18,1997[7].
On May 19, 1991, Cadette and Herbert Carter filed a joint motion to continue the trial set for June 18 [8]. The trial court denied the continuance. Instead, the court gave Mr. Carter an additional thirty days in which to file responsive pleadings to the supplemental petition asserting that he was responsible for Cherise’s support[9], and severed this claim.
1 ^Finally, on June 18, 1997, seven and one-half years after Maurice Williams began supporting Cherise Carter, and over three years after he petitioned the court to order the testing that eliminated him as Cherise’s father and filed his first petition to annul the order of support, Mr. Williams’ petition to annul was tried. The court took the matter under advisement. On July 17, 1997, the trial court signed a judgment annulling the Consent Judgment of March 14, 1990, and granting Mr. Williams’ petition for disavowal.
On August 4, 1997, the trial court granted Cadette Carter’s motion for devolutive appeal from the judgment of July 17, 1997.
On August 8, 1997, counsel for Cherise filed a Motion for Appeal of the July 17 judgment. On October 16, 1997, he was allowed to withdraw. On December 19, 1997, an order was issued granting Cherise Carter pauper status, and appointing the Tulane Law Clinic as curator ad hoc to represent her interests “in this litigation for all purposes including appeal.” On May 29, 1998, another attorney was appointed to represent Cherise Carter. On October 7, 1998, this Court ordered that another attorney be substituted as counsel for Cherise Carter.
DISCUSSION:
Ms. Carter contends that the trial court erred in: “not [sicjgranting Mr. Williams’ petition for disavowal;” “not granting appellant’s exception of prescription that was filed against all petitions of appellee;” and, “admitting in evidence the results of the blood tests.” Cherise Carter also complains of the trial 113court’s failure to maintain the exception of prescription to Mr. Williams’ petition to disavow.
DISAVOWAL ACTION:
Ms. Carter argues that Mr. Williams’ “Petition for Disavowal is procedurally incorrect.” We agree.
Maurice Williams and Cadette Carter were never married; he is not presumed to be Cherise’s father. See La. Civ.Code arts. 184 and 185. The action to disavow paternity of a child is the means by which one who is presumed to be a child’s father may rebut that presumption. See La. Civ.Code art. 187. As Mr. Williams is not Cherise’s presumed father an action to disavow is not available to him. See O’Brien v. O’Brien, 94-1988, p. 4 (La.App. 4 Cir. 4/13/95), 653 So.2d 1364, 1367, writ denied 95-1557 (La.11/17/95), *1160 663 So.2d 719. Therefore, the judgment granting the petition to disavow is vacated. Because of this disposition we do not address the question of prescription of the disavowal action raised by Cherise Carter in her appeal.
ADMISSION OF THE BLOOD TEST RESULTS:
Cadette Carter contends that the trial court erred in admitting the results of the blood testing because Mr. Williams did not comply with the procedure outlined in La. Rev.Stat. 9:397.3 A.[10] Specifically, she alleges that a written report of the 114results of the testing, certified by a sworn affidavit of the expert who supervised the tests is not filed in the record as required by the statute. She also complains that notice of the report was not mailed to her by certified mail or served on her as required by the statute.
Ms. Carter’s allegations are not supported by the record. The written report of Roche Biomedical Laboratories, certified by the sworn affidavit of Clifford R. Harris, Ph.D., an associate director of the laboratory, was attached to Mr. Williams’ petition to annul and filed in the record on January 23, 1995. The sheriffs return shows that Ms. Carter was served through her attorney on February 21,1995.
The written report of GenTest Laboratories, certified by sworn affidavit of Michael L. Murray, Ph.D., an associate director of GenTest, was attached to Mr. Williams’ Petition to Disavow Paternity and Annul Two Prior Judgments and filed in the record on September 25, 1995. The sheriffs return indicates that service was made on Ms. Carter through her attorney of record on September 29,1995.
The record reflects that the reports were in accordance with the statutory requirements, and were served on Ms. Carter, through her attorney. Ms. Carter’s contention that the statute was not complied with in this regard is unfounded.
Because the conclusions of all the experts, as disclosed by their reports admitted in accordance with La.Rev.Stat. 9:397.3 A, was that Maurice Williams could not be the biological father of Cherise Carter, the court’s resolution of the paternity issue in Mr. Williams’ favor was appropriate. See La.Rev.Stat. 9:397.3 D.
|, .ANNULMENT OF JUDGMENT OF MARCH 14,1990:
The trial court entered judgment annulling the Consent Judgment of March 14, 1990. The court based its decision on its determination that Mr. Williams’ belief that he was Cherise Carter’s biological child was an error of fact, and, therefore, was cause to annul the consent judgment. The court rejected Ms. Carter’s argument that Mr. Williams’ action to annul the judgment was prescribed because it was filed five years after the consent judgment, although Mr. Williams suspected that he was not the child’s father as early as April 14,1989, when Cherise was born.
In her brief on appeal, Ms. Carter states that “the issue of paternity of the child came before the court not once but three (3) times and with Mr. Williams’ consent was determined.” This four-volume record does not support that statement.
The petition filed by Ms. Carter that started this avalanche of litigation did not seek to have Cherise’s paternity established. Rather, it sought custody and child support, and alleged that Mr. Williams, “who has acknowledged the said minor child, Cherise Marisia Carter, does not dispute that he is the natural and biological father of said minor child, ac *1161 cording to the natural and biological mother/petitioner herein.”
Maurice Williams was neither Cherise’s presumed father, nor named as her father when her birth was registered, nor did he make an acknowledgement or | ^declaration by notarial act, which would have been sufficient to establish his obligation to support Cherise without a judgment of paternity. It is curious, therefore, that Ms. Carter’s petition for support did not seek to have Cherise’s paternity judicially determined.
For whatever reason, Ms. Carter did not put Cherise’s paternity at issue in her petition for support and custody. Consequently, the consent judgment of March 14, 1990, which put an end to the litigation initiated by that petition, did not determine that Cherise was Mr. Williams biological child. The consent judgment gave Ms. Carter exactly what she had requested in her petition: Mr. Williams was ordered to pay child support and Ms. Carter was awarded sole custody of Cherise, “subject to the reasonable visitation rights of Maurice Williams, who is the natural biological father of the minor child, Cherise Marisia Carter.”
Paternity of Cherise was not raised until December 8,1993, when Mr. Williams filed a rule for blood testing to establish paternity in accordance with La.Rev.Stat. 9:396, which authorizes a court to order blood testing in any civil action in which paternity is a relevant fact. Unfortunately, the judgment ordering the testing was not signed until October 20, 1994, almost a full year after Mr. Williams filed his rule. The specimens were collected, and the testing completed, resulting in a report of December 13, 1994, advising that, based on DNA analysis, Maurice Williams could not be the biological father of Cherise Carter. On January 23, 1995, one month after he was excluded as Cherise’s father, Mr. Williams filed a petition to annul the initial judgment of support of March 14, 1990, as well as the [^judgment of May 29, 1991, increasing support, alleging that they were obtained by fraud or ill practice.
Article 2004 of the Louisiana Code of Civil Procedure provides that an action to annul a judgment on the grounds of fraud or ill practices is timely if brought within one year of the discovery of the fraud or ill practices by the plaintiff in the nullity action.
Mr. Williams candidly admitted that he always had some doubts that he was Cherise’s father. However, Ms. Carter. steadfastly maintained that only Mr. Williams could have fathered the child, as she had an “exclusive” sexual relationship with him at the time Cherise was conceived. She continued to claim an exclusive sexual relationship with Mr. Williams despite his having been excluded as Cherise’s biological father by blood testing. In fact, on the day of trial, despite the two sets of testing that proved that Mr. Williams was not Cherise’s father, Ms. Carter continued to assert, under oath, that she had not had sexual relations with anyone else. Therefore, the trial court’s finding that Mr. Williams did not discover the fraud or hi practices until he received the results of the first court-ordered blood tests is supported by the record.
Mr. Williams filed his petition to annul the support judgments within one year of the discovery that he could not possibly be Cherise’s father. The trial court, therefore, correctly overruled the exception of prescription to the petition to annul.
An action to annul a judgment is not limited to cases of actual fraud or intentional wrongdoing. The Louisiana Supreme Court has found that La. CivLsCode proc. art.2004, is broad enough to encompass “all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable.” Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983).
*1162 It is difficult to imagine a judgment that more clearly meets the above criteria than the March 14, 1990 consent judgment saddling Mr. Williams with the support of a child whom he had not fathered. Mr. Williams indicated, in writing, that he was not represented by counsel when he signed the consent judgment prepared by Ms. Carter’s attorney at that attorney’s office. Ms. Carter’s petition for support and custody did not put Cherise’s paternity at issue. The consent judgment prepared by Ms. Carter’s attorney included the “gratuitous” language that the custody award was subject to Mr. Williams’ right, “as the child’s natural and biological father,” to reasonable visitation.
Ms. Carter maintained for over seven and a half years that Mr. Williams had to be Cherise’s father because she had an “exclusive” sexual relationship with him at the time the child was conceived. She persisted to espouse that impossibility, under oath, despite being confronted with scientific evidence that excluded Mr. Williams as Cherise’s biological father. Ms. Carter excepted to paternity testing, and was successful in delaying it for almost a year after it was first requested. When the testing reported that Mr. Williams was not Cherise’s father, Ms. Carter used every exception, objection, and delaying tactic in the legal arsenal, and hainvented others, to prevent Mr. Williams from having his petition to annul heard.[11] All the while, Maurice Williams was paying to support a child who had been proven not to be his.
Ms. Carter obtained an assignment of Mr. Williams’ income. She filed motions for contempt, in which she specifically requested that he be incarcerated for willful neglect to pay child support. Mr. Williams eventually was granted a small reduction in support, retroactive to the date he requested. Ms. Carter, however, obtained an order directing that Mr. Williams’ employer pay her via an income assignment. This prevented Mr. Williams for taking an immediate credit for the nine month support overpayment while his motion to reduce was pending.
The judgment of March 14, 1990, and the subsequent support judgments that flowed therefrom were obtained under circumstances that show that Maurice Williams was deprived of his rights. The enforcement of these judgments requiring Mr. Williams to support this child, long after it was shown that he could not possibly be her father, unquestionably has been inequitable and unconscionable.[12] The trial court’s annulment of the judgments is supported by the record; for the court to have done otherwise would have been criminal.
| ^CONCLUSION
For the foregoing reasons, the portion of the judgment granting Mr. Williams’ petition for disavowal is vacated, and the portion of the judgment annulling the judgment of March 14, 1990, ordering Maurice Williams to support Cherise Carter, as well as the subsequent orders of support, are affirmed.[13]
*1163 JUDGMENT VACATED IN PART; AFFIRMED IN PART.

. Cadette testified that she and Herbert Carter were legally separated at the time of conception, but not divorced.

. There is a disagreement between Mr. Williams and former counsel for Ms. Carter as to this notation. Mr. Williams testified that Ms. Carter's former attorney contacted him directly and told him to come to his office to sign the agreement, and that he did not need his attorney in order to do so. Ms. Carter's former attorney testified that Mr. Williams showed up at his office, and advised that he no longer had an attorney. He, therefore, told Mr. Williams to make the notation under his signature.

. This consent judgment is at page 107 of Vol. I of the record. It is not signed by either of the parties or their respective attorneys. However, page 108 is missing from both the original and duplicate records. It is assumed that this missing page is the second page of this consent judgment.

. The record does not indicate that hearing on the exceptions or trial on the merits was held as scheduled, nor does it indicate that these matters were continued.

. We are unable to discern from the record why either this exception or the order was necessary as the court had earlier maintained the exception and Ms. Carter had, in fact, amended her petition for support to include Herbert Carter.

.There is no order granting further continuances in the record. It, however, appears that there were additional continuances.

.On May 16, 1997, Herbert Carter filed a petition for appeal seeking an order allowing him to appeal devolutively from the March 10, 1997 dismissal of his Action for Disavowal of Paternity as abandoned. The duty judge signed an Order of Appeal on the date the petition was filed, but the appeal was never lodged in this court.

. The motion advised that counsel for Cherise Carter did not oppose the motion, but counsel for Maurice Williams objected to the continuance.

. A judgment to that effect was signed on June 23, 1997.

. Ms. Carter’s initial objection to the blood test results is that La Rev. Stat. 9:396 applies to actions to determine paternity, not to petitions to disavow paternity or petitions for nullity. The pleading filed by Mr. Williams on December 9, 1993, was a "Rule for Paternity Blood Testing.” His action for nullity and his action to disavow, filed after the blood testing proved that he could not be Cherise's father, were based on the fact that he was not the child’s biological father.

. For example, the "Dilatory and Peremptory Exceptions to Motion for Expedited Hearing on Paternity,” filed on January 16, 1966, and the "Dilatory and Peremptory Exceptions to Motion to Terminate Child Support Payments,” filed on February 12, 1996.

. We note that Cherise is entitled to support from Herbert Carter, who is presumed to be her father because of his marriage to her biological mother when Cherise was conceived. Mr. Carter’s disavowal action was dismissed as abandoned on March 10, 1997, and his motion for appeal was never filed in this court.

.Mr. Williams’ answer to appeal did not seek modification, revision or reversal of the judgment, nor did it seek damages against Ms. Carter. See La.Code Civ. Proc. art. 2133. Mr. Williams’ answer specifically asked that the judgment be affirmed, but that this Court cite an additional basis for the lower court's ruling. Because we conclude that the trial court’s judgment on the nullity issue should be affirmed, we need not address the additional basis advanced by him in support of that judgment.