974 So.2d 761 (2007)
Eugenie Duvic RICHARDSON
v.
Joseph Rosson RICHARDSON.
No. 2007-CA-0430.
Court of Appeal of Louisiana, Fourth Circuit.
December 28, 2007.
*764 Ellen Cronin Badeaux, Christine E. Bergeron, Ellen Cronin Badeau, LLC, Mandeville, LA, for Plaintiff/Appellee.
Lanny R. Zatzkis, Karen D. McCarthy, Yvette A. D'Aunoy, Zatzkis McCarthy & Associates, L.L.C., New Orleans, LA, for Defendant/Appellant.
(Court Composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, and Judge MAX N. TOBIAS, JR.)
MAX N. TOBIAS, JR., Judge.
Joseph Rosson Richardson ("Richardson") timely appeals rulings of the trial court (1) admitting into evidence certain drug test results; (2) awarding sole custody of his minor daughter, Sophie Sorrell Richardson ("Sophie"), to Eugenie Duvic Suggs ("Suggs"); (3) limiting his visitation with Sophie to supervised visitation; (4) ordering him to enter a Drug Treatment Program within 60 days; and (5) setting child support arrearages in the amount of $23,202.50. For the following reasons we affirm in part, amend in part, reverse in part, and render as amended.
I. Factual Background and Procedural History
*765 Suggs[1] and Richardson[2] were married on 4 April 1998, and divorced on 8 May 2001. Since the filing of the original petition for divorce on 22 August 2000, numerous judgments and interim orders had been issued by the court.
By consent judgment entered on 6 December 2000, the parties agreed to joint custody of their only child, Sophie, with Suggs being designated as the primary domiciliary parent and Richardson being granted specified rights of unsupervised visitation. An interim judgment of support was issued on 20 February 2001 ordering Richardson to pay Suggs $625.00 per month in child support.
On 11 January 2002, a consent judgment was signed wherein Richardson's visitation schedule was modified.[3] The previously ordered interim child support was maintained, and Richardson was further ordered to continue payment of health insurance coverage for Sophie with the right to deduct the monthly insurance premium from his $625.00 monthly child support obligation.[4] Both parties were ordered to refrain from having unrelated persons of the opposite sex spend the night when Sophie was in his or her respective care. The consent judgment further provided that either party could request the other to undergo random drug testing once per month.
On 17 April 2002, as part of the consent judgment partitioning the community, Richardson was ordered to immediately pay $5,500.00 to Suggs (the amount of interim spousal support and child support arrearages due), and to pay $5,000.00 of community debts. Richardson was also ordered to pay an additional $2,525.00 in interim spousal support and child support arrearages within one year from the date of the signing of the judgment.
In March 2005, Suggs filed a motion to increase the child support being paid, alleging a change in circumstances; she further filed a motion for contempt and for a wage assignment due to Richardson's alleged failure to timely pay child support payments and his failure to comply with the court's order to pay the outstanding $5,000.00 community debt. On, 23 May 2005, Richardson was found to be in contempt of court and ordered to pay the remainder of the outstanding community debt within 30 days; it was agreed that child support payments would be made to Suggs via an income wage assignment directly from Richardson's employer. An income assignment order was signed by the court on 8 June 2005. The court further ordered the parties to appear on 18 July 2005 to address any matters still pending.
On 18 July 2005, a trial was commenced, but not completed, on several pending rules, including Suggs' motion to increase the child support and a motion for contempt filed by Suggs alleging that Richardson failed to comply with the 11 January 2002 judgment requiring random drug testing within 24 hours of a request for a test. Based on the testimony presented, including testimony from a certified public accountant, the trial court issued an interim *766 order of child support, without prejudice to either party, increasing Richardson's monthly support obligation to $1,707.00 retroactive to 2 March 2005.[5] The trial judge further ordered the parties to return to court on 17 August 2005 for the taking of further testimony on the child support issue; the matter was left opens[6] On 15 August 2005, Richardson filed a motion for contempt alleging Suggs violated the court's 12 November 2001 order by allowing an unrelated person of the opposite sex to reside in her home, and a rule to amend visitation. On 17 August 2005, the parties appeared at which time the trial court reissued an interim child support award of $1,707.00 per month and allowed Richardson's then counsel to withdraw. All open and pending matters, including the rule to increase the child support; were continued to 26 September 2005.
On 29 August 2005, Hurricane Katrina struck the New Orleans area, ravaging the city and leaving behind in its wake a mass of destruction. Consequently, the September 2005 hearing did not go forward as scheduled. Circumstances arising out of the hurricane further complicated the instant litigation. Richardson's employer relocated him to Dallas, Texas, and he has remained in Texas since that time.
In February 2006, Richardson was terminated from his job for lack of production, and remained unemployed until August 2006. As a result of his unemployment and the corresponding change in his financial circumstances, in July 2006, Richardson filed a rule to reduce/suspend child support payments. Additionally, following the hurricane, Suggs remarried, moved from New Orleans to Mandeville, Louisiana, and changed jobs. In September 2006, as a result of the relocation by both parties, and claiming the existing visitation schedule was no longer feasible, Richardson filed a rule to amend the visitation.[7]
On 15 September 2006, Suggs filed an in camera motion for a change in custody and for supervised visitation on the grounds that (1) Richardson tested positive for cocaine metabolites on two occasions,[8] evidencing an ongoing drug addiction affecting his ability to care for Sophie while she was in his custody, and (2) Richardson relocated to Texas. After several continuances and brief court appearances, the trial on all pending matters was reset for December 2006.
*767 Trial was held on 4 and 5 December 2006.[9] As a result thereof, the court issued two judgments dated 12 December 2006 and 4 January 2007. Reasons for judgment accompanied the January 2007 judgment. In the 12 December 2006 judgment, the trial court ordered: (1) sole custody of Sophie be granted to Suggs; (2) a change in visitation, whereby Richardson would only be allowed supervised visitation in the presence of a court-appointed supervisor; (3) that Richardson undergo, monthly random drug testing; (4) that Richardson enter a drug treatment program within 60 days; and (5) that Sophie not be left alone with any person known by Suggs to have a current drug or alcohol addiction. In the 4 January 2007 judgment, the trial court ruled: (1) that Richardson was in child support arrears in the amount of $23,202.50, which amount was made executory; (2) that Richardson's interim child support obligation of $1,707.00 per month be reduced to $930.00 per month, retroactive to the date of his filing of the motion to spend/reduce child support on 6 July 2006; (3) that Richardson pay an additional $150.00 per month until all child support arrears were paid; (4) that Suggs maintain health insurance coverage for Sophie, with Richardson being responsible for 54% of the premium and Suggs responsible for 46%; (5) that Richardson be responsible for 54% of any extraordinary medical expenses and Suggs responsible for the remaining 46%; (6) that Richardson was in contempt for failing to pay child support as ordered by the court, and that he pay $2,000.00 in court costs and attorney's fees; and (7) that Suggs was in contempt of court for cohabitating with her current husband prior to her marriage in violation of the court's judgment.[10]
It is from these two judgments that Richardson timely appealed wherein he posits the trial court erred in the following ways, to wit:
(1) admitting the drug testing results without proper change of custody evidence and without the proper expert testimony to interpret the results;
(2) allowing Farley Richard to testify as an expert relative to drug testing results;
(3) ordering Richardson to enter a Drug Treatment Program within 60 days;
(4) awarding sole custody of the minor Sophie to Suggs;
(5) limiting Richardson' visitation to supervised visitation; and
(6) calculating incorrectly the amount of child support arrearages owed by Richardson.
II. Law and Analysis
In child custody matters, the determinations of the trial judge are entitled to great weight, and the trial court's discretion will not be disturbed on appellate review in the absence of a clear showing of abuse. AEB v. JBE, 99-2668, p. 7 (La.11/30/99), 752 So.2d 756, 761.
A. Admissibility of the Drug Testing Reports
Due to an apparent concern from the inception of this litigation that Richardson *768 and Suggs might be partaking of illicit drugs, the court ordered that both parties be subject to random drug testing. Introduced into evidence at trial were the reports of three separate drug tests for Richardson taken over a 17-month period. Each of the three reports indicated that Richardson tested positive for illicit drug use.[11]
La. R.S. 9:331.1 enables a court in a child custody or visitation proceeding to order a party to submit to drug testing, and states that "[t]he provisions of R.S. 9:397.2 and 397.3 shall govern the admissibility of the drug test results." See La. R.S. 9:331.1. Richardson avers the trial court erred in admitting his drug test reports into evidence based on the lack of compliance with the requirements set forth in La. R.S. 9:397.2 and 397.3 A, 13, and C.
La. R.S. 9:397.3 provides safeguards, which, if followed, authorizes the introduction of blood test results without the necessity of the personal appearance and live testimony of an expert. See State v. Stringer, 567 So.2d 758 (La.App. 2 Cir.1990); State v. Simien, 95-1407 (La.App. 3 Cir. 7/24/96), 677 So.2d 1138. Specifically, La. R.S. 9:397.3 A, B, and C provide:
A. (1) A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit of record. The affidavit shall state in substance:
(a) That the affiant is qualified as an examiner of blood or tissue samples for inherited characteristics, including but not limited to blood and tissue types, to administer the test and shall give the affiant's name, address, telephone number, qualifications, education, and experience.
(b) How the tested individuals were identified when the samples were obtained.
(c) Who obtained the samples and how, when, and where the samples were obtained.
(d) The chain of custody of the samples from the time obtained until the tests were completed.
(e)The results of the test and the probability of paternity as calculated by an expert based on the test results.
(f) The procedures performed to obtain the test results.
(2) A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with Code of Civil Procedure Article 1314.
(3) A party may challenge the testing procedure within thirty days of the date of receipt or service of the notice.
B. (1) If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test made by the same laboratory or expert.
(2) (a) If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, *769 the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination. The summons for the individual making the original of the report may be served through his employer's agent for service of process listed with the secretary of state or served pursuant to R.S. 13:3201 et seq.
(b) A certified report of blood or tissue sampling which indicates by a ninety-nine and nine-tenths percentage point threshold probability. that the alleged father is the father of the child creates a reputable presumption of paternity.
C. Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.
Initially, we note that a trial judge has vast discretion concerning the admissibility of evidence. The trial judges decision to admit or exclude evidence will not be reversed on appeal absent a clear showing that he or she has abused that discretion. Boykins v. Boykins, 04-0999, p. 4 (La.App. 4 Cir. 4/24/07), 958 So.2d 70, 74; Boutte v. Kelly, 02-2451, p. 10 (La. App. 4 Cir. 9/17/03), 863 So.2d 530, 541. In the case at bar, our review of the record indicates that the drug test reports do not meet the requirements set forth in La. R.S. 9:397.3 A for their admissibility into evidence. Specifically, the drug test reports were not accompanied by the sworn affidavits of the experts supervising the drug testing of Richardson's hair or urine samples. The record also contains no evidence that the notice of their filing was sent to all parties. While the jurisprudence is clear that trial testimony of the expert certifying the test results is not necessary for admission of the test report into evidence, the affidavit of the expert supervising the testing is required. See Rigaud v. Demise, 613 So.2d 761 (La.App. 4 Cir.1993). Without the required certification by affidavit made at or near the time of testing, a testing report is not admissible. See Dept. of Social Services v. Dorsey, 95-0446, P. 4 (La.App. 1 Cir. 11/9/95), 665 So.2d 95, 97.
To overcome the affidavit requirement, counsel for Suggs sought to certify the drug test reports through the testimony of Farley Richard, who dictated them into the record. However, Mr. Richard was admittedly not the person who supervised the drug testing of Richardson's specimens; neither was he in any way affiliated with the drug laboratories that actually performed the testing. Additionally, Mr. Richard could not verify the required "chain of custody" of the hair and urine samples tested as required by La. R.S. 9:397.3 A. Thus, had Mr. Richard given an affidavit to support the admissibility of Richardson's drug test reports in lieu of his live testimony attempting to certify them, his affidavit would not have complied with the statute, as he was not the "expert who supervised the tests." See La. R.S. 9:397.3.
Several cases interpret La. R.S. 9:397.3, albeit each involving blood sample testing in paternity suits, wherein courts have allowed the admission of test reports that are accompanied by the sworn affidavit of an expert affiliated with the laboratory performing the testing, even if the affiant expert did not himself actually perform the tests. In Carter v. Williams, 98-1526 (La. App. 4 Cir. 12/29/99), 750 So.2d 1153, this court found that the certification of two separate blood test reports complied with *770 the statutory requirements for admissibility as the affidavits were made by the associate directors of the laboratories performing the actual tests.
Moreover, in State v. Simien, supra, certification of one set of drug reports was found to comply with La. R.S. 9:397.3 when the reports were accompanied by the affidavit of the associate director who monitored the testing of the testing laboratory, even though he was not the person who performed the actual testing. In addition to the affidavit, the certifying expert also provided live testimony at trial regarding the testing protocol employed by the laboratory over which he was the director. Conversely, a second set of test reports were deemed inadmissible because the certification indicated that the certifying expert had only reviewed the test results and failed to establish that he, in fact, performed or supervised the testing as required by the statute. Significantly, the certifying expert for the first set of reports testified at trial, whereas the certifying expert for the second set of reports was not called to the stand.
Based on our, review of the jurisprudence interpreting La. R.S. 9:397.3, in order for drug testing reports to properly be admitted into evidence, we find the statute requires either an affidavit of the expert that actually performed or supervised the testing accompany the drug test report sought to be introduced, and/or the live testimony of the expert certifying the test results who holds a supervisory position over the facility performing the drug testing and who can verify the protocol and procedures employed by the lab when conducting such testing. In this case sub judice, Mr. Richard testified that he is the owner of CT Medical Services, a specimen collection service provider. While Mr. Richard's facility was responsible for obtaining Richardson's hair and urine samples used for two sets of his drug tests, the actual hair and urine analyses were performed by another laboratory. Specifically, the drug analysis on Richardson's hair sample was conducted by Omega Laboratories, who generated the report containing the drug test results.[12] Kroll LSI was the facility that performed the quantitative analysis of Richardson's urine specimen and generated the drug testing report documenting its results. The record indicates that neither Mr. Richard nor his facility participated in, or had any supervision over, the drug testing of Richardson's samples upon which the drug test reports sought to be introduced were generated.
The record also reveals that Mr. Richard was unable to verify the chain of custody of Richardson's hair and urine samples once they were picked up from his laboratory by the courier, who then delivered them to the actual testing laboratories.[13] The chain of custody documentation presented at trial established the chain of custody of the samples only while they were in the possession of CT Services. As CT Services did not perform the actual testing on the samples at its facility, once *771 the samples were picked up by courier to be delivered to Omega and Kroll LSI, Mr. Richard could not verify the chain of custody beyond that point.
Richardson further argues that allowing Mr. Richard to certify the drug test reports by dictating them into the record amounts to "the improper admission into evidence of impermissible hearsay" because Mr. Richard had no personal knowledge regarding the accuracy of the drug testing results, and thus, had no personal knowledge of the "truth" of the results as his laboratory did not actually perform the tests. More specifically, without authentication and a proper foundation, we find the drug test results should have been excluded as hearsay under Article 803(6) of the Louisiana Code of Evidence.
Hearsay is "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered into evidence to prove the truth of the matter asserted." La. C.E. art. 801C. In dictating the drug test results into the record, Mr. Richard was offering the statements of others (namely, Omega Laboratories, Kroll LSI, and Quest Diagnostics) as true. While drug test results would normally fall under the business records exception to the hearsay rule set forth in La. C.E. art. 803(6), we agree with Richardson and hold that in accordance with La. R.S. 9:331.1, La. R.S. 9:397.2 and 9:397.3 (rather than La. C.E. art. 803(6)) provide the statutory exceptions to the hearsay rule for the admissibility of drug testing information sought to be introduced into evidence in child custody and visitation proceedings. It is well established that in determining the applicability of laws, the more specific governs over the more general. See In the Interest of A.C., 93-1125, p. 16 (La.1/27/94), 643 So.2d 719, 730 (citing Mixon v. St. Paul Fire and Marine Ins. Co., 147 La. 302, 84 So. 790, 791 (1920)).[14] Applying La. R.S. 9:397.2 and 9:397.3 A to Richardson's drug test reports, we find that allowing Mr. Richard to offer, the drug testing results as his own testimony was the improper admission of hearsay evidence.
Based on the foregoing, we find that Suggs failed to meet her burden of laying a proper foundation for the admissibility of the drug test reports in accordance with the requirements set forth in La. R.S. 9:397.3 A. Without a proper foundation witness to authenticate these drug test reports and verify their results, we find they are inadmissible, and the trial court erred in allowing them into evidence. Moreover, we find that it was also error to allow Mr. Richard to certify the drug test reports by dictating them into the record.
Although the admission of the drug test reports was erroneous, we find that their admission was harmless error. See Fernandez v. Pizzalato, 04-1676, p. 20 (La.App. 4 Cir. 4/27/05), 902 So.2d 1112, 1124 (finding a violation of the La. C.C.P. art. 1636 requirement that a proffer be allowed was harmless error because other evidence of arrest records was present in the record); Arceneaux v. Amstar Corp., 06-1592, p. 19 (La.App. 4 Cir.10/31/07), 959 So.2d 755, (finding a failure to allow a proffer of evidence was harmless because other evidence of the prescription issue was in the record). The effect of an erroneous evidentiary ruling is that `Mirror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected." La. C.E. art. 103. The concept of "substantial right" as used in article 103 is "akin to the `harmless error' doctrine applicable in both *772 civil and criminal matters." George Pugh, Robert Force, Gerald Rault and Kerry Triche, Handbook on Louisiana Evidence Law, p. 300 (2006 Ed.). The jurisprudence has "properly taken the view that the risk of prejudice is often less likely in a bench trial than in a jury trial." Id.
In the case at bar, we cannot say, based on the totality of the record, that a substantial right of Richardson was violated by the trial court's admission of the drug test reports in light of other admissible evidence contained in the record on appeal. The record is replete with testimony by Richardson acknowledging his use of cocaine over a period of time. Most significant is Richardsons admission at trial that he used cocaine within the preceding "several months." The date of Richardsons testimony was 4 December 2006. His testimony of drug use corresponds with the date of his last drug test yielding positive results for cocaine metabolites, which occurred on 18 October 2006. Richardsons own self-incriminating testimony substantiates the trial courts finding of a material change in circumstances, specifically, Joseph Richardsons continued use of illegal drugs and that this change of custody is in the best interest of the minor child. Clearly Richardsons testimony admitting ongoing drug use obviated the need for the courts consideration of the three positive drug test reports in rendering its judgment. We find the drug test reports to be merely cumulative and corroborating of Richardsons own damning testimony. Accordingly, we find the courts evidentiary error in allowing Richardsons drug test reports into evidence when they failed to comply with the admissibility requirements of La. R.S. 9:397.3 was harmless.
B. Testimony of Farley Richard
By his next assignment of error, Richardson challenges the trial courts decision to qualify Mr. Richard as an expert in interpreting drug testing results. In addition to allowing Mr. Richard to certify Richardson's drug test reports by dictating them into the record, the trial court certified Mr. Richard as an expert qualified solely to interpret Richardson's drug testing results based on the fact that Mr. Richard has seen the numerical numbers contained in the drug test reports thousands of times and understands their significance. While we recognize that Louisiana law does not require that a person possess a specific educational degree in order to qualify as an expert in a given field, and that an expert can be qualified based on his or her experience alone, because we find that the admission of Richardson's drug testing reports into evidence was harmless error, we pretermit discussion as to whether Mr. Richard was qualified to testify regarding the drug testing results in this case.
C. Drug Treatment
Richardson contends the trial court erred in ordering him to participate in a drug treatment program as it violated his right to refuse medical treatment under both the Louisiana and United States Constitutions. Richardson's argument is twofold: (1) the trial court's order for drug treatment was based solely on the inadmissible drug test reports and findings of the expert witness, Mr. Richard, and (2) the drug treatment order was not linked with the orders for Sole custody or supervised visitations, making it a stand-alone order for Richardson to accept medical treatment for which he has the constitutional right to refuse.
At the outset, we acknowledge that in the instant case, as in most custody cases, the trial courts determination was based heavily on factual findings. We are further mindful that as an appellate court, we *773 cannot set aside the trial courts factual findings unless we determine that no reasonable factual basis exists for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Through Dept. of Transportation and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Major v. Major, 02-2131, p. 5 (La.App. 1 Cir. 2/14/03), 849 So.2d 547, 550.
Based on these precepts, in the instant case, we find there was ample evidence in the recordlindependent of the drug test reports or the testimony of the expert, Mr. Richardsubstantiating Richardson's continued illegal drug use. During his own testimony, Richardson freely and unequivocally admitted to using cocaine within the three months immediately preceding the December 2006 trial. And even if the three positive drug tests showing repeated and ongoing cocaine use were not properly admitted into evidence, Richardson did not refute or deny that the findings were somehow in error. The record indicates the trial judge specifically questioned Richardson regarding his repeated use of cocaine. Richardson testified that he was also taking several different medications for which he asserted he had prescriptions. In light of Richardson's testimony and, after reviewing the record as a whole, we find ample support for the trial court's order for him to enter a drug treatment program.
Next, Richardson's contention that somehow the drug treatment order was "separate and apart" from the trial court's custody and visitation orders is without merit. The judgment embodying the drug treatment order is clearly entitled "Judgment on Child Custody and Visitation." The judgment begins with an order for sole custody based upon the finding of a material change in circumstances triggered by Richardson's "continued use of illegal drugs." The judgment then orders supervised visitation monthly, as well as random drug testing, and concludes with the order for drug treatment. Richardson concedes in his brief that "[h]ad the Trial Court linked the drug treatment order to Mr. Richardson's visitation and/or the custody provisions, it would have passed constitutional muster." After reviewing the trial court judgment in its entirety, we `find that the order for drug treatment is clearly sufficiently linked to the visitation and child custody provisions to pass constitutional muster in the instant case.
Accordingly, we find this assignment is without merit and that, based on the totality of the record, including Richardson's own admission of ongoing drug use, the trial court was well within its vast discretion in a child custody and visitation proceeding to order him to submit to drug treatment. We do, however, note that the trial court judgment should have made Richardson's entry into and successful completion of a drug treatment program a condition to his ability to enjoy unsupervised visitation in the future with Sophie. Therefore, we affirm the trial court's order of drug treatment, but further, modify the trial court's judgment to provide that until such time, following a contradictory hearing, that the court finds by a preponderance of the evidence that Richardson has successfully completed a drug treatment program, he shall continue supervised visitation with Sophie.
D. Grant of Sole Custody and Restricted Visitation
In his next two assignments of error, Richardson argues the trial court erred in *774 awarding sole custody of Sophie to Suggs because Suggs failed to establish by "clear and convincing evidence" that sole custody is in Sophie's best interest. Richardson further contends the trial court erred in restricting his visitation with Sophie because there was no evidence that supervised visitation was necessary to protect the minor child.
It is a well-recognized tenet in Louisiana jurisprudence that, an award of child custody is not a tool to regulate human behavior. Everett v. Everett, 433 So.2d 705, 708 (La.1983); Cleeton v. Cleeton, 383 So.2d 1231, 1236 (La.1979) (on rehearing). Every child custody case must be viewed within its own peculiar set of facts. McKenzie v. Cuccia, 04-0112, p. 5 (La.App. 4 Cir. 6/23/04), 879 So.2d 335, 339.
In Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, the Louisiana Supreme Court discussed the burden of proof that a party seeking a change in child custody must meet. The general rule is that "the paramount consideration in any determination of child custody is the best interest of the child." Id. at p. 12, 708 So.2d at 738. See also La. C.C. art. 131. The trial judge is in the best position to ascertain the best interest of the child given each unique set of circumstances. See Bagents v. Bagents, 419 So.2d 460 (La.1982). An additional jurisprudential burden is imposed when a change in a considered[15] custody decree is requested. In Evans, the Supreme Court described the burden of proof in that situation. The Supreme Court stated:
When a trial court has made a considered decree of permanent custody, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is "so deleterious to the child as to justify a modification of the custody decree," or of proving by "clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child."
97-0541 at p. 13, 708 So.2d at 738 (citation omitted and emphasis in original). See also Fernandez v. Pizzalato, 04-1676, pp. 4-5 (La.App. 4 Cir. 4/27/05), 902 So.2d 1112, 1116-1117.
Additionally in Evans, the Supreme Court stated that when the original custody decree is a stipulated[16] judgment, the heavy burden of proof required for a change in a considered decree is not applicable. When the custody decree sought to be modified is a stipulated decree, the party seeking to modify the decree must prove "(1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child." Evans, supra at p. 13, 708 So.2d at 738; Fernandez, supra at p. 5, 902 So.2d at 1116-1117.
Only the stipulated decree rendered in the instant case is the decree that is being appealed. Therefore, because Suggs was not seeking a change of a considered decree when she brought her rule for a change in custody, we find that she was not required to meet the heavy the burden of proof required for a change in a considered decree.
*775 La. C.C. art. 134 sets forth the relevant factors a court shall consider in making a determination regarding the best interest of the child in custody and visitation matters, which include, but are not limited to, the following factors:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child;
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The court is not bound to make a mechanical evaluation of all of the statutory factors listed in article 134, but should decide each case on its own facts in light of those factors. Flanagan v. Flanagan, 36,852, p. 6 (La.App. 2 Cir. 3/5/03), 839 So.2d 1070, 1074. The court is not bound to give more weight to one factor over another; when determining the best interest of the child; the factors must be balanced and weighed in view of the evidence presented. See Hoskins v. Hoskins, 36,031 (La.App. 2 Cir. 4/5/02), 814 So.2d 773. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Sawyer v. Sawyer, 35,583, p. 3 (La.App. 2 Cir. 11/2/01), 799 So.2d, 1226, 1229-30.
In the case at bar, as in most child custody cases, the trial court's determination was based heavily on factual findings. As stated previously, an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d at 844. In the case at bar, Suggs was required to show a change in circumstances as, part of her burden of proof. We find that she has met this part of her burden of proof. The trial court was presented with evidence of repeated cocaine use by Richardson over a seventeen-month period of time, even though Richardson knew that he was subject to drug testing upon 24-hour notice as per a court order.[17] The trial court also *776 heard testimony from the witnesses, including Richardson, and was in the best position to evaluate their credibility, and obviously did not find credible Richardson's testimony that he was not a habitual user of illegal drugs. The court expressed concern in its reasons for judgment about the safety of the minor child due to Richardson's ongoing drug use, and determined that this alone was sufficient to warrant a change in custody from joint custody of the parties to sole custody to Suggs. There was also testimony regarding concern about the child's proper supervision when visiting Richardson in Texas. While Richardson and his new wife attempted to refute this testimony, the trial judge exercised her discretion in determining that supervised visitation in the state of Louisiana is in the best interest of Sophie at this time. Based on our review of the record, and applying the factors set forth in the child support statute, we cannot say that the trial court abused its discretion or that it was clearly wrong in modifying the custody award and visitation schedule in this case.
While we affirm the trial court's judgment modifying custody and implementing supervised visitation only in the state of Louisiana based on Richardson's testimony admitting illegal drug use, we further modify the trial court's judgment to provide that upon Richardson's showing by a preponderance of the evidence that he has successfully completed a drug treatment program and, further, that it is in the best interest of Sophie, he can petition the court for a resumption of the previous unsupervised visitation schedule.
E. Child Support and Arrearages
In his last assignment of error, Richardson contends the trial court erred in determining past due child support when it used the $1,707.00 per month "interim" judgment award in its calculation of arrearages, instead of using the "final" judgment award of $625.00. The trial judge calculated child support arrearages in the amount of $23,202.50, making that amount executory. The trial court's "Reasons for Judgment Signed January 4, 2007" make it clear that it `was, in effect, granting Richardson's rule to reduce child support, which was filed after the interim judgment was issued, thereby reducing the interim amount of $1,707.00 per month (effective 2 March 2005), to $930.00 per month, retroactive to July 6, 2006, the date of the filing of his rule seeking reduction.
In support of his argument on appeal, Richardson contends that, at the time the interim support award was rendered on 18 July 2005 following the hearing on Suggs' motion to increase support, the issue of child support was left open and scheduled to be tried further on another day. Thus, Richardson avers that when the support issue was fully tried on 4 and 5 December 2006, the judgment rendered thereafter was actually a final judgment on Suggs' motion to increase child support (effectively granting same and increasing the amount from $625.00 to $930.00), and not a granting of Richardson's motion to reduce/suspend support as indicated by the trial court's judgment, based on the fact that the $625.00 amount was not reduced, but rather increased to $930.00. Richardson further argues that because the award was increased from $625.00 to $930.00, the interim award of $1,707.00 should not even be considered when calculating the amounts past due. We disagree and find that the trial court correctly used the interim support award of $1,707.00 in its calculation of arrearages. Based on the *777 record, we calculate the child support arrearages due by Richardson as follows:
March 2005[18] through June 2006 (at $1,707.00 per month)$27,312.00
July 2006[19] through December 2006 (at $930.00 per month)$5,580.00
Thus, the total amount of child support Richardson was obligated to pay from March 2005 to December 2006 totals $32,892.00. The record shows that during these months, Richardson did make payments totaling $8,912.50. Accordingly, giving Richardson credit for the amounts paid, we find the total amount of child support arrearages due to be $23,979.50, and we modify the trial court judgment to reflect this amount.

CONCLUSION
For the foregoing reasons, we affirm the trial court judgment in part, amend in part, reverse in part, and render as amended.
AMENDED IN PART; AFFIRMED AS AMENDED.
NOTES
[1] Mrs. Suggs was remarried on 11 November 2006 to her current husband, Robert Suggs.
[2] Mr. Richardson remarried in 2003 to his current wife, Ann Richardson.
[3] This visitation schedule was further modified by a consent judgment signed on 17 April 2002.
[4] The consent judgment provided that should Suggs elect to take over maintenance of the health insurance coverage, she would become responsible for the premium and Richardson would then be obliged to pay the full amount of $625.00 per month in child support.
[5] At the 18 July 2005 hearing on the motion to increase the child support, due to Richardson's failure to produce any tax returns, Form 1099 to employees, his current wife's bank statements, credit card statements and pay stubs, the trial court imputed Richardson's annual income from his bank statements and the testimony taken. The court ordered Richardson to pay $1,082.00 (the difference between the $625.00 in child support paid by wage assignment and the increased amount of $1,707.00) directly to Suggs. The original judgment to this effect was signed by the trial court on 26 July 2005. The judgment, however, contained typographical errors and a motion to vacate it was filed by Richardson and then by Suggs. The interim judgment was reissued and signed on 18 January 2006.
[6] A judgment to this effect was signed on 26 July 2005.
[7] The rule to amend the visitation was heard by the court on 20 September 2006, and Richardson was granted one weekend visitation in October 2006, with future visitation rights to be considered by the court in the subsequent trial of all remaining pending matters.
[8] On 20 June 2006 the court ordered Richardson to submit to a hair drug test within 24 hours of the hearing, which test yielded positive results for cocaine metabolites. Richardson previously tested positive for cocaine metabolites on 16 May 2005.
[9] The trial court considered the following motions and rules: (a) the completion of testimony related to Suggs' motion to increase, the child support; (b) Suggs' motions for contempt against Richardson for failure to pay child support and to comply with the court-ordered drug testing; (c) Suggs' motion for sole custody and supervised visitation; (d) Richardson's rule to suspend/reduce the child support; (e) Richardson's rule to amend the visitation; and (f) Richardson's motions for contempt against Suggs for her cohabitating with her husband prior to marriage.
[10] The court having found "good cause" did not impose sanctions on Suggs.
[11] On 16 May 2005, Richardson underwent drug testing performed by Quest Diagnostics revealing positive results for cocaine metabolites based on a hair sample. On 21 June 2006, Richardson reported for a second drug test. Both hair and urine samples were obtained. Omega Laboratories reported that the hair sample yielded positive results for the presence of cocaine metabolites. Kroll LSI's report evidences that the urinalysis was positive for benzodiazepines. Then, on 18 October 2006, Richardson again reported for drug testing. His hair sample sent to Omega Laboratories for a quantitative analysis tested positive for cocaine metabolites, and the urinalysis conducted by Kroll LSI showed positive results for cocaine metabolites and benzodiazepines.
[12] The sample for the initial drug test was collected by B.A.L. & Associates and submitted to Quest Diagnostics for testing. No representative from either facility was called to testify at trial.
[13] La.R.S. 397.3 A(1)(d) requires that in order for a drug test report to be admissible, certification of the "chain of custody of the samples from the time obtained until the tests were completed" must be included in the sworn affidavit accompanying the report. Additionally, La. R.S. 9:397.2 provides that the chain of custody "may be established documentation is submitted with the expert's report and if such documentation was made at or near the time of the chain of custody and was made in the course of regular business activity."
[14] R.S. 9:331.1 specifically states that La. R.S. 9:397.2 and 397.3 A, B, and C "shall govern the admissibility of the drug test results,"
[15] A "considered decree" is "an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children." Evans, supra at p. 12 (La.2/6/98), 708 So.2d at 738.
[16] A "stipulated judgment" is one in which the parties consent to a custodial arrangement and no evidence of parental fitness is taken. Id.
[17] In this regard, the record indicates that Richardson did not appear for even one of his drug tests within 24 hours of such a request for drug testing as required by the court's judgment.
[18] Suggs filed the rule to increase child support on 2 March 2005. The interim judgment setting the amount at $1,707.00 was made retroactive to this date.
[19] Richardson filed his rule to reduce/suspend child support on 6 July 2006, and the trial court judgment granting the decrease from $1,707.00 to $930.00 was made retroactive to the date of filing.