Judge TERRI F. LOVE.
11 This appeal arises from a child custody dispute. The father sought to modify the joint custody arrangement and to be named the primary domiciliary parent. The father claimed in the motion for modification that the custodial mother’s intent to return to Africa with their daughter was not in the best interest of the child. After a trial on the merits, the trial court maintained the mother as the primary domicili *819 ary parent. The trial court concluded that although “great good” would come from fostering a better relationship between the father and his child, removing the child from her primary custodial caregiver for the last several years was not in the best interest of the child. The father asserts that the trial court abused its discretion by failing to consider the factors set forth in La. C.C. art. 134 and to modify the child custody arrangement. We find the trial court properly considered the factors of La. C.C. art. 134, as demonstrated in the trial court’s oral reasons, and did not abuse its discretion in designating the mother as the domiciliary parent. Therefore, we affirm.

V,FACTUAL BACKGROUND AND PROCEDURAL HISTORY

James Foshee (“Mr. Foshee”) and Crystal Kigoni, formerly Foshee, (“Mrs. Kigo-ni”) are the parents to a daughter born on October 25, 2004. Mr. Foshee and Mrs. Kigoni were later married in 2005. Subsequently, Mr. Foshee filed a petition for divorce in 2007. In connection with the divorce, the parties entered into a consent judgment wherein both parties were awarded joint custody of the minor child. Mrs. Kigoni was designated as the domiciliary parent. At the time, Mr. Foshee was attending nursing school, and it was agreed that Mrs. Kigoni could take the minor child with her while she served as a missionary in western Kenya, Africa. The judgment further provided that Mr. Fosh-ee’s completion of nursing school would be considered a material change in circumstances for the purpose of allowing modification of the judgment.[1] The parties were later divorced in 2009. Additionally, Mr. Foshee has completed his nursing studies.
Mr. Foshee filed a motion for emergency ex parte order of temporary custody of minor child and a motion to modify custody upon learning that Mrs. Kigoni and the minor child relocated to North Carolina. Prior to the hearing, the trial court signed an interim consent judgment setting out a visitation schedule for Mr. Foshee and his daughter. Following the trial on the merits, the trial court ruled that Mrs. Kigoni would remain the domiciliary parent of the minor child; however, the trial court ordered the parties to create a visitation schedule. Subsequently, Mr. Foshee filed a request for written reasons. He also filed a motion for new trial in |Rorder for the trial court to rule on Mr. Foshee’s visitation with the minor child. The record indicates that the trial court never ruled on the motion for new trial.
Mr. Foshee later filed a motion for de-volutive appeal of the trial court’s judgment designating Mrs. Kigoni the minor child’s domiciliary parent. After the trial court granted Mr. Foshee’s appeal and Mr. Foshee’s appeal was lodged in this Court, the parties entered into a consent agreement in August of 2012. In the agreement, the parties created a visitation schedule. Thus, before any hearing was held on the motion for new trial, the parties settled the visitation issues with the August 2012 Consent Agreement. Accordingly, Mr. Foshee’s appeal as to the child custody issue follows.

RIPENESS

In her appellate brief, Mrs. Kigoni claims that because Mr. Foshee signed the August 2012 Consent Agreement regarding the visitation issues and made pursuant to the trial court’s request for the parties to confect a visitation schedule, Mr. *820 Foshee acquiesced to the trial court’s ruling designating Mrs. Kigoni as the primary domiciliary parent and thereby barring this appeal.
A review of the August 2012 Consent Agreement does not address the issue of domiciliary parent. The sole issue addressed in the consent agreement is visitation and physical custody, as the domiciliary parent is the issue of the present appeal. Additionally, Mrs. Kigoni admits in her brief that the consent agreement does not specifically label her as the primary domiciliary parent. Further, the issue of whether the present appeal is ripe for appellate review was previously addressed in Mrs. Kigoni’s motion to dismiss; which this court denied.

\ ¿STANDARD OF REVIEW

It is well-established that child custody determinations made by the trial court are “entitled to great weight and will not be disturbed by an appellate court absent a clear showing of abuse of discretion.” McKenzie v. Cuccia, 04-0112, pp. 8-4 (La.App. 4 Cir. 6/23/04), 879 So.2d 335, 338. See also Watts v. Watts, 08-0834, p. 2 (La.App. 4 Cir. 4/8/09), 10 So.3d 855, 857.
Mr. Foshee argues that because the trial court failed to provide written reasons for its judgment addressing the applicable factors under La. C.C. art. 134 the recognized standard of review in a child custody case should not apply. However, it is a well-established rule that a trial court’s failure to provide written reasons is not grounds for reversing the judgment. Hall v. Folger Coffee Co., 03-1734, p. 4 (La.4/14/04), 874 So.2d 90, footnote 9. Further, the Louisiana Supreme Court in a discussion of the applicable standard of review stated, “the trial court is not required to expressly analyze each factor in its oral or written reasons for judgment.” Gathen v. Gathen, 10-2312, p. 12 (La.5/10/11), 66 So.3d 1, 9.
Although Gathen involved relocation, the Supreme Court’s conclusion applies here because the best interest of the child remains the standard governing the trial court’s modification decision. It follows that despite the trial court’s failure to expressly analyze each factor in oral or written reasons, the appropriate standard of review is that the trial court’s modification decision is entitled to great |5weight and will not be disturbed absent a clear abuse of discretion. Id., 10-2312 at p. 13, 66 So.3d at 9. Additionally, the Supreme Court acknowledged:
[A] trial court’s failure to expressly analyze each factor makes appellate review for abuse of discretion somewhat difficult. Most certainly an articulation of the trial court’s consideration of each of the factors would better facilitate appellate review. However, based on the reasons given, we can assume that the trial court discussed the factors it felt were decisive to the ease, and did not discuss the factors that it believed were not as important and should not be given much weight.... [T]he trial court is free to give whatever weight it deems appropriate to each of the factors. Thus, upon review, it is appropriate for a reviewing court to look to the reasons and factors the trial court did expressly take into account in reaching its ultimate determination, and, for the factors the trial court did not expressly discuss, it is appropriate for the reviewing court to determine whether the trial court’s failure to give weight to these factors led the court to abuse its discretion in reaching its ultimate determination....
Gathen v. Gathen, 10-2312, p. 13 (La.5/10/11), 66 So.3d 1, 10.
Accordingly, we find no merit to Mr. Foshee’s argument, and this Court on ap *821 pellate review will review the facts particular to this case as presented at trial when determining whether the trial court abused its discretion. Our review follows.

MODIFICATION OF CUSTODY

A party seeking to modify the custody arrangement as provided in a consent judgment, “has the burden of providing (1) that there has been a material change of circumstances since the entry of the original decree, and (2) that the proposed modification is in the best interest of the [child].” Picou v. Picou, 08-0688, p. 4 (La.App. 4 Cir. 12/17/08), 1 So.3d 761, 763.
Mr. Foshee was required to show a material change of circumstance as part of his burden of proof. The original consent agreement provided a stipulation that Mr. Foshee’s completion of nursing school would be considered a material change in circumstance for the purpose of allowing modification of the judgment. Thus, | fibecause Mr. Foshee has since completed his nursing program, Mr. Foshee has satisfied the first element of his burden of proof.

DOMICILIARY PARENT

Mr. Foshee contends that the trial court failed to consider the best interest of the child when it designated Mrs. Kigoni as the domiciliary parent. To determine a custody arrangement that is in the best interest of the child according to La. C.C. art. 131, the court shall consider all factors as outlined in La. C.C. art. 134, including:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
17(12) The responsibility for the care and rearing of the child previously exercised by each party.
“The court is not bound to make a mechanical evaluation of all the statutory factors ... but should decide each case on its own facts in light of those factors.” Richardson v. Richardson, 07-0430, p. 21 (La.App. 4 Cir. 12/28/07), 974 So.2d 761, 775. As previously mentioned, the trial court is not required to give more weight to one statutory factor over another when making a determination regarding the best interest of the child in custody and visitation matters. Rather, the factors must be *822 balanced and weighed in view of the evidence presented. Id.
A review of the record demonstrates that the trial court’s focus was over the good that would come with fostering a stronger relationship between Mr. Foshee and his daughter and how removing her from her mother’s primary care would impact the best interests of the child. Specifically, the trial court found:
[I]t’s a big tragedy what Mr. Foshee has lost in terms of contact with his child ... But when I go through all the criteria laid out in the Civil Code Article 134 concerning the best interests of the child, each parent has demonstrated a tremendous love, affection and effort to foster emotional ties with the child and with the other parent. I think that despite their differences and despite the tremendous hurdles of the distance, the physical distance between them, they have tried as best as possible to co-parent. And in terms of the occasional bickering among parents, married people do that all the time.
But I’m just so impressed with the love and hard work that both parents have done to take care of [their daughter]. The biggest stumbling block ... that I was looking for was the tremendous good that could come from fostering a closer relationship between [the minor child] and her father, was it worth breaking up a stable and happy relationship at the age of seven.
The trial court’s focus on these issues and its impact on the child’s best interests directed its decision to maintain Mrs. Ki-goni as the primary domiciliary parent.
|sIn view of the factors set forth in La. C.C. art. 134 and the trial court’s ruling, the trial court gave great consideration to “the length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment,” as well as the “permanence, as a family unit, of the existing or proposed custodial home or homes.” See La. C.C. art. 134(4) and (5).
Since the termination of the parties’ relationship when the minor child was three years old, she has lived primarily with her mother. The minor is now eight years old and has lived with her mother abroad since 2007. Mr. Foshee alleges that due to the civil unrest in Africa and Mrs. Kigoni’s nomadic lifestyle as a missionary, their daughter has not had a stable or adequate environment in which to live.
To support this allegation, Mr. Foshee points to several emails and blog entries Mrs. Kigoni read in open court describing her experience as a missionary and the living conditions of African villagers. In an email communication to Mr. Foshee, Mrs. Kigoni describes the difficulty of finding the foods the minor child prefers to eat. In another communication, Mrs. Ki-goni describes how she and the minor child were unable to leave their housing “compound” for three days as a result of the violence in the area. There is also evidence that indicates that Mrs. Kigoni and the minor child lived in several places from December 2007 until they left Africa in November 2011. Notably, Mr. Foshee admits that Mrs. Kigoni and the minor child did not suffer the aforementioned hardships everywhere they lived, but Mr. Fosh-ee avers that Mrs. Kigoni’s choice to do missionary work in Africa does not offer their daughter a permanent and stable environment.
| ¡Acknowledging that the aforementioned evidence was presented, the record also indicates that the decision to designate Mrs. Kigoni the primary domiciliary parent in the original consent decree was made by both parties. Further, at the time the parties agreed to Mrs. Kigoni’s *823 designation, Mr. Foshee was aware of Mrs. Kigoni’s plans to do missionary work. Additionally, Mr. Foshee praised Mrs. Kigo-ni’s efforts and ability to provide a stable environment for the minor child in light of the difficulties they encountered. In an email sent in May 2008, Mr. Foshee stated:
I do think you are doing well for the most part in caring for her. I told you that I am proud of how you have dealt with things thus far, and I meant that. Despite my previous fears about the village life, I understand that God had helped you through it. You two are healthy and experiencing an amazing life.
The record demonstrates that despite the nomadic lifestyle and difficulties Mrs. Ki-goni faced as a missionary, the trial court found that the minor child enjoyed a stable and adequate environment.
We also find that the trial court’s conclusion that maintaining the minor child’s family unit is supported by the record. Notwithstanding the difficulties Mrs. Kigo-ni witnessed as a missionary, the trial court found she maintained a strong family unit for the child. The minor child’s present family unit includes her step-father, Eric Kigoni, whom Mrs. Kigoni married in 2009, and the minor child’s older sister.[2] In an email to Mr. Foshee, Mrs. Kigoni noted, “that [our daughter] has two daddies that she loves,” and “[she] and Eric are very close.” Mrs. Kigoni also testified that Mr. Kigoni plays an active role in the minor child’s academic and religious education. Likewise, the minor child has a formed a bond with her older sister.
|inBased on the evidence presented, the trial court determined that maintaining the permanence as a family unit of the minor child’s current custodial home was in the best interest of the child. The trial court noted, “that though [she] appears to have above-average intelligence, it’s very hard for a seven-year old to remember what life was like when she was four.” The trial court concluded that breaking up the minor child’s current family unit, moving to a new country and away from her “primary caregiver on a physical basis” for the past several years, is not in the best interest of the child.
With regard to the other factors set forth in La. C.C. art. 134, it is evident from the record that both parties have love, affection, and emotional ties to their daughter. Likewise, the record reveals both parties have the capacity and disposition to give the child love, affection, and spiritual guidance; to continue the education and rearing of their daughter; and in addition, to provide her with food, clothing, medical care, and other material needs. Both Mr. Foshee and Mrs. Kigoni testified at trial that financial strains and physical distance often made fostering communication between the minor child and her father difficult. The trial court noted that neither party has made a demand for child support because both parties recognize the high cost of travel between Kenya and the United States. Similarly, both parties testified that internet and telephone access is limited in certain parts of Africa where Mrs. Kigoni and the minor child have lived. Despite these difficulties, the evidence presented at trial demonstrates that both parties are willing and able to facilitate and encourage a close and continuing relationship between the minor child and the other party.
| ^DECREE
After review of all the evidence and testimony presented at trial and the great *824 weight entitled to a trial court’s child custody determinations, we find the trial court properly considered the relevant factors set forth in La. C.C. art. 134. Further, we do not find the trial court abused its discretion in maintaining Mrs. Kigoni as the primary domiciliary parent.
AFFIRMED.

. This provision in the original consent judgment is the basis for Mr. Foshee's motion to modify custody filed in the trial court.

. Prior to meeting Mr. Foshee, Mrs. Kigoni had a daughter from a previous relationship.