STEPHEN J. WINDHORST, Judge.
12Plaintiff, Leyman Jose Martinez, appeals from that portion of the trial court’s decision awarding custody of the minor child. We affirm the judgment of the trial court.
On May 30, 2012, Mr. Martinez, filed a petition seeking majority custody of his minor daughter. Named as defendant was the child’s mother, Ada Marlin Lagos. A hearing was held on August 20, 2013, and at its conclusion, the trial court awarded joint custody, designating Ms. Lagos as the primary domiciliary parent. Mr. Martinez filed a Motion for New Trial for Reargument Only, which was denied by the trial court. Thereafter, Mr. Martinez filed a Reurged Motion for a New Trial and Motion for Written Reasons for Judgment, which was also denied by the trial court. Mr. Martinez then filed a Motion for Appeal, which was granted.[1]
|3In his first three assignments of error, Mr. Martinez contends that the trial court committed legal error by not properly considering the best interest factors set forth in La. C.C. art. 134, and in awarding primary domiciliary custody to Ms. Lagos.
In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child. La. C.C. art. 131. La. C.C. art. 134 sets out 12 non-exclusive factors for the court to consider in awarding custody:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
*234 (7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own |4facts in light of those factors. Robertson v. Robertson, 10-926 (La.App. 5 Cir. 4/26/11), 64 So.3d 354, 362-63; Robert v. Robert, 44,528 (La.App. 2 Cir. 8/19/09), 17 So.3d 1050, 1052, writ denied, 09-2036 (La.10/7/09), 19 So.3d 1. These factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Robertson, supra. Each child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the children. Robertson, supra; Harvey v. Harvey, 13-81 (La.App. 3 Cir. 6/5/13), 133 So.3d 1, writ denied, 13-1600 (La.7/22/13), 119 So.3d 596. On appellate review, the determination of the trial court in establishing custody is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion. Martin v. Martin, 11-1496 (La.App. 3 Cir. 5/16/12), 89 So.3d 526; Bridges v. Bridges, 09-742 (La.App. 5 Cir. 2/9/10), 33 So.3d 914, 918.
The parties in this case spoke Spanish and English. They testified at the hearing through an interpreter.
Ms. Lago and Mr. Martinez were never married. At the hearing on the issue of custody, Ms. Lagos testified that she and Mr. Martinez resided together for around 18 months after their daughter was born. For the next three years, she and the child lived together without incident. The child was six at the time of the custody hearing.
Ms. Lagos further testified that she owns a two bedroom condominium. Originally, Mr. Martinez had been providing $300.00 per month for child support, but then he reduced the amount to $150.00. She was having difficulty making the mortgage payment, so she rented the second bedroom to her uncle’s stepson. She testified that her tenant spends most of his time away, and that he does not drink. lfiHe smokes cigarettes, but never around the child, and always goes outside. Ms. Lagos stated that the child has her own bed in Ms. Lago’s bedroom, and that the child has sufficient privacy. Ms. Lagos further testified that her work schedule was flexible and that she could adjust it around the schedule of the child.
At the time of the hearing, the child had graduated from kindergarten and was in first grade. Her report card was introduced to show that she made good grades in kindergarten. According to Ms. Lagos, she makes sure the child’s homework is completed, and ■ when she (Ms. Lagos) needs help in explaining, she contacts her niece, who can read and speak English. The child speaks and comprehends English very well. Ms. Lagos further stated that when the child was with Mr. Martinez, her homework would not be completed, or it would be incorrect.
Mr. Martinez testified that he and Ms. Lagos were still able to work together *235 after he moved, and that difficulties did not start to arise until December of 2010, when he started dating his wife. He saw his daughter less often after his marriage in December of 2011, until a hearing officer put a custody and visitation schedule in place in September of 2012. Mr. Martinez further alleged that Ms. Lagos did not meet him when he brought the child to her, but only left her door open at the condominium, as if “she didn’t want to receive” the child. Ms. Lagos testified that she left her door open, but did not approach Mr. Martinez because he would berate her in front of the child.
Also at the hearing, Mr. Martinez and his witnesses alleged that the child would appear with unkept hair and dirty fingernails. These allegations were denied by Ms. Lagos and her witnesses.
Mr. Martinez testified that he has a three bedroom house that he shares with his wife and his mother, and the child has her own bedroom. The child has a good | fireIationship with his current wife, who treats her like a daughter. His wife has a 19 year old daughter who recently married and does not live with them. However, she is available to assist with the child’s homework. Mr. Martinez testified that he works from 6:30 A.M. to 3:00 P.M., so he would be able to pick up his daughter from school. Mrs. Martinez testified that she would be able to bring the child to school in the morning.
Several contentious encounters between Mr. Martinez and Ms. Lagos were related at the hearing. August 20, 2012 was the child’s first day of kindergarten. Ms. Lagos testified that she had an appointment at 8:00 A.M., and then she had to work. She went to the school after her appointment to see if Mr. Martinez was there and whether he could stay with the child. She did not have the child with her when she appeared at the school. Mr. Martinez stated that he went to the school for the child’s first day, and that Ms. Lagos showed up alone, telling him it was not necessary for the child to appear on the first day of school. He stated he had Ms. Lagos leave, pick up the child and bring her to school. At the close of the school day, there again was a dispute between the two of them as to who should take the child home. Shortly after this, they appeared before a hearing officer who set a provisional custody schedule.
A second encounter occurred when they were at worship at Good Shepard Church. Ms. Lagos was already seated when Mr. Martinez entered with the child. Ms. Lagos asked to see her for a minute, and Mr. Martinez responded no and requested that Ms. Lagos not come close when he had custody. Later, as the child was leaving her Sunday school classroom, she saw Ms. Lagos, and went over to show her a coloring book. The child was wearing a fake fingernail at the time. Ms. Lagos was holding the coloring book along with the child, and as Mr. Martinez grabbed the child, the child’s fake nail came off. Mr. Martinez accused |7Ms. Lagos of hurting the child, to which Ms. Lagos responded that it was an accident.
A third event occurred on January 1, 2013. Mr. Martinez drove to Ms. Lagos’ house and took the child away with him for several hours, even though it was Ms. Lagos’ custody day.
The final event was related in which Ms. Lagos had some medicine to treat an infected mosquito bite. Mr. Martinez went to her house to retrieve the medicine, and she threw it on the ground in front of him. Ms. Lagos testified that she threw it because he requested that she do so.
Ms. Lagos also testified that she had to change her passwords on her banking and mortgage accounts because Mr. Martinez *236 would access them to discover how much money she had and how much she owed on her condominium.
Also at the hearing, it was established that on three separate incidents, Ms. Lagos called the police to complain about Mr. Martinez’s actions. She testified that on the first occasion, in August of 2011, she had a friend at her house, and she discovered that Mr. Martinez was at the window, listening to their conversation. After the friend left, Mr. Martinez came into the condo, and they argued. Mr. Martinez apparently stayed that night, and when he left the next morning, he took her cell phone and charger with him. This was not the first time he had taken items from her condo without her permission, so two days later, she called the police.
The second time Ms. Lagos called the police; she had received a call from Mr. Martinez informing her that he had taken the child to the doctor because she was ill. Ms. Lagos knew that Mr. Martinez was scheduled to work that evening, so she told him to bring the child to her if the child was ill. Ms. Lagos called for a police officer to go with her to Mr. Martinez’s house, however when they knocked no one answered the door.
|sThe third incident occurred in March of 2013. Ms. Lagos stated that Mr. Martinez had been following her as she drove to pick up a co-worker and to go to work, so she called the police. Mr. Martinez was stopped and he related to the officer that he was following Ms. Lagos in order to pick up the child, although it was not the appropriate time. According to Ms. Lagos, the police officer told Mr. Martinez to stop following her. At the hearing, Mr. Martinez denied following Ms. Lagos. He testified that he just happened to be in the area and he was surprised when he was stopped by the police.
Ms. Lagos, in response to cross-examination, stated that she did not file for any restraining orders, because Mr. Martinez would stop the offending behavior after she notified the police. She also stated that Mr. Martinez lowered his child support after she contacted the police.
The trial court, after considering the testimony, maintained the schedule of the hearing officer that provided for joint custody to the parties, with the mother as custodial parent during the school year and shared physical custody during the summer months. Mr. Martinez was awarded visitation during the school years on Tuesdays and Thursdays from the end of the school day until 7:00 P.M. and on every other weekend from Friday when school ends until Sunday at 7:00 P.M. Physical custody of the child during holidays was also set forth. The parties were also ordered to participate in co-parenting therapy.
In this appeal, Mr. Martinez argues that the trial court erred in failing to grant him physical custody, or in the alternative, to grant shared custody. He argues that the trial court made its determination based on the parties’ relationship toward each other, and not on the best interest of the child. He further argues that the trial court erred in failing to address the child’s current living situation.
|flIn rendering judgment, the court orally noted that Mr. Martinez had control issues. The court also stated that the child’s sleeping arrangement would have to be addressed in the future as she got older.
At the time of the hearing, the child was in school, and a shared weekly physical custody would cause disruption. In addition, Ms. Lagos had been the primary physical custodian for the entirety of the child’s life. Thus, the trial court could have found that shared custody, with Ms. *237 Lagos as the primary physical custodian during the school year was in the best interest of the child. Furthermore, the fact that the child’s sleeping arrangement may need to be addressed in the future does not mandate that it be addressed in the present. All parties agreed that the child was happy and successful with the current custody arrangement. The trial court is not required to make a mechanical evaluation of every factor of La. C.C. art. 194. Robertson, supra at 363. Every child custody case must be viewed based on its own particular facts and relationships involved, with the goal of determining what is in the best interest of the child. Mulkey v. Mulkey, 12-2709 (La.5/7/13), 118 So.3d 357, 367.
Furthermore, the court of appeal cannot simply substitute its own findings for that of the trial court. Id. at 368. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. Id. at 367; In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47, 62.
We find no manifest error in the trial court’s factual determination that the best interest of the child is to have her mother as domiciliary custodian during the school year, and a sharing of custody with weekly exchanges during the summer months.
|inIn his fourth assignment of error, Mr. Martinez contends that the trial court erred by signing a judgment that was prepared by opposing counsel and had been circulated for less than five working days, in violation of Uniform Rules, District Courts, Rule 9.5. However, the record reflects that although the judgment was not circulated five days prior to signing, Mr. Martinez suffered no prejudice as a result of this failure. Mr. Martinez’s counsel was given a copy of the judgment prior to its signing, and the parties were told to appear in court to discuss the judgment if an agreement could not be reached. Mr. Martinez’s counsel was able to review the judgment and, because the parties did not agree, they appeared in the judge’s chambers prior to the signing of the judgment. Therefore, any error in counsel’s noncompliance with Rule 9.5 was harmless error. Burgo v. Henderson, 12-332 (La.App. 3 Cir. 12/19/12), 106 So.3d 275, 282; Lewis v. ODECO, Inc., 07-0497 (La.App. 4 Cir. 4/8/09), 12 So.3d 363, 369, writ denied, 09-1386 (La.10/10/09), 19 So.3d 463, 09-1425 (La.10/16/09), 19 So.3d 479, cert. denied, 559 U.S. 972, 130 S.Ct. 1705, 176 L.Ed.2d 183 (2010).
In his fifth assignment of error, Mr. Martinez argues that the trial court erred in failing to grant his written motion for written reasons for judgment, which was made after the denial of his motion for new trial.
Pursuant to La. C.C.P. art. 1917, “the court when requested to do so by a party shall give in writing its findings of fact and reasons for judgment, provided the request is made not later than ten days after the mailing of the notice of the signing of the judgment.” When the trial judge fails to comply with a timely request for written findings of fact and reasons for judgment under La. C.C.P. art. 1917, the proper remedy for the aggrieved party is to apply for supervisory writs and move for remand of the case for the purpose of providing the trial judge an opportunity to comply with the request. Anders v. Boudion, 93-894 (La.App. 5 Cir. 3/29/94), 636 So.2d 1029, 1031; Burgo v. Henderson, 12-332 (La.App. 3 Cir. 12/19/12), 106 So.3d 275, 282. In this ease, despite the trial court’s failure to comply with the mandates of La. C.C.P. art. 1917, Mr. Martinez failed to avail himself of the appropriate remedies. Instead he argues in his appeal brief that the trial court’s failure to pro *238 vide written reasons constitutes reversible error. To the contrary, a trial court’s failure to provide written reasons is not grounds for reversing the judgment. Foshee v. Foshee, 12-1358 (La.App. 4 Cir. 8/28/13), 123 So.3d 817, 820. See also Hall v. Folger Coffee Co., 03-1734 (La.4/14/04), 874 So.2d 90, footnote 9. We find no merit to this assignment of error.
In his final two assignments of error, Mr. Martinez alleges that the trial court erred in failing to grant a contradictory hearing and in failing to grant his two motions for new trial.
The appellate standard of review of the ruling on a motion for a new trial is whether the trial judge abused his discretion. Woodlands Dev., L.L.C. v. Regions Bank, 11-263 (La.App. 5 Cir. 12/28/11), 83 So.3d 147, 153, writ denied, 12-0424 (La.4/9/12), 85 So.3d 704. In this case, the motion for new trial alleges that the verdict was contrary to law and evidence, however Mr. Martinez failed present anything to support his motion, other than argument already heard by the trial court at the hearing on the custody trial. We find no abuse of discretion in the trial court’s denial of the motion for new trial.
Mr. Martinez relies on La. C.C.P. art. 1971, which provides that “A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only.” However, Article 1971 is permissive rather than mandatory, and does not require a contradictory hearing in every situation where a motion for new trial is filed. A motion for new trial may be summarily denied in the absence |12of a clear showing in the motion of facts or law reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial. Williamson v. Haynes Best W. of Alexandria, Inc., 02-1076 (La.App. 4 Cir. 1/21/04), 865 So.2d 224, 227, writ denied, 04-0784 (La.5/7/04), 872 So.2d 1089.
Mr. Martinez makes no showing of facts or law which would warrant the granting of a new trial in this case. These assignments of error are without merit.
For the above discussed reasons, the trial court’s ruling is affirmed. Costs are assessed against appellant.
AFFIRMED.

. Mr. Martínez designated the record, including only his petition, motion for new trial and reurged motion for new trial, motion for appeal, judgment and trial transcript of the custody hearing. No other pleadings or transcripts were designated, and are not contained in the record on review. At the custody hearing, Mr. Martinez presented his testimony, along with that of his wife, his mother, his sister (who is married to his counsel) and his employer (who is his sister’s ex-father-in-law). Ms. Lagos presented her testimony, along with that of her sister and her niece, and admitted the child’s report card into evidence.