WINDHORST, J.
Appellant, Patrice Ariatti, appeals the judgment of the trial court regarding custody of the minor child and other related orders, as well as the dismissal of her petition for protection from abuse against appellee, Keith Plaisance. For the following reasons, we affirm the trial court's judgment.
FACTS AND PROCEDURAL HISTORY
Ms. Ariatti and Mr. Plaisance were married on May 21, 2011, and they had a child on February 24, 2014. The couple's marriage began to deteriorate in 2015. Their problems escalated on March 8, 2016 during a disagreement regarding Ms. Ariatti's decision to take their child to her parents' house for an extended period of time while she recovered from a surgery. Ms. Ariatti asserts, during this disagreement, that Mr. Plaisance committed two separate acts of domestic violence. That day, the parties physically separated, and the following day, Ms. Ariatti filed a petition for divorce and a separate petition for protection from abuse pursuant to La. R.S. 46:1231 et seq ., Domestic Abuse Assistance Act, in the Twenty-fourth Judicial District Court for Jefferson Parish. A judgment of divorce was granted on May 19, 2017.
The Petition for Protection
In her petition for protection, Ms. Ariatti alleged that, on March 8, 2016, Mr. Plaisance attempted to prohibit her from leaving their home with their child and committed two acts of domestic violence against her and the child, specifically that he grabbed her by the arms and shoved her up against a wall, and threw plastic hangers that allegedly hit both her and their child in the chest. On April 11, 2016, the parties appeared with counsel before the domestic commissioner for a full evidentiary hearing on appellant's petition for protection. Ms. Ariatti, Mr. Plaisance, and the two officers who responded to the call from the parties' home that day all testified.
The record indicates that at the time of the alleged incidents, the parties were arguing about whether Ms. Ariatti was going to take their son to her parents' house while she recovered from a surgery. Mr. Plaisance testified that Ms. Ariatti lunged at him while he was sitting on the couch as *1243 if she would choke him. He grabbed her wrists as he stood up and backed her up from him. Ms. Ariatti confirmed that she was standing over him and yelling at him a few inches from his face, when he grabbed her wrists. She also confirmed that she was not injured during this incident. Ms. Ariatti also asserts that on this evening, Mr. Plaisance picked up several hangers with clothing and threw them at her and the child, hitting them both. Contrary to this, Mr. Plaisance testified that he dropped the hangers and clothing in her suitcase.
Ms. Ariatti called the police that evening, but when they arrived, she made no allegations of domestic abuse. Ms. Ariatti advised the police that they were having an argument about relationship problems. The record indicates that Mr. Plaisance did nothing to physically prevent Ms. Ariatti from leaving the house and no one was harmed. She ultimately left the house with the child and most of their belongings that night and went to stay with her parents.
At the conclusion of the hearing, the Commissioner found that the evidence did not establish domestic violence, but that the parties had a family argument. He stated that "Ms. [Ariatti] admits that she goes and gets in Mr. Plaisance's face. He then grabs her by the wrists and restrains her. I don't think this is domestic violence. The testimony on the hanger incident, that is just contradictory. I don't think there is evidence one way or the other." Based on these findings, the Commissioner dismissed Ms. Ariatti's petition for protection.
Ms. Ariatti filed an objection to the dismissal of her petition for protection, and requested a stay of the interim order and the appointment of a custody evaluator. On May 25, 2017, there was a hearing before the trial court on Ms. Ariatti's petition for protection. The transcript of the proceedings before the Commissioner was entered into evidence by Mr. Plaisance without objection at the hearing before the trial court. The trial court only allowed new evidence and testimony to be presented because there was a full trial on the merits that was transcribed before the Commissioner. Ms. Ariatti's counsel asserted she should be allowed to have her witnesses re-testify before the trial court and objected on the record to the trial court not hearing the entire matter de novo .
In making its determination, the trial court reviewed the transcript of the proceedings before the Commissioner. The trial court found that there was no basis for the petition for protection from abuse based on the police officers' testimony that there were no complaints of abuse made on the night of the incident, there were no marks on Ms. Ariatti and there were no allegations of injury to her or the child. The trial court dismissed the petition for protection.
The Custody Proceedings
On May 25, 2017 and August 29, 2017, the trial court also heard testimony regarding the custody issues. The trial court found that the custody evaluator, Dr. Karen Van Beyer (the "C.E."), qualified as an expert in custody evaluations and allowed her to testify.[1] On the custody issues, the C.E., Ms. Ariatti, Mr. Plaisance, and Mr. Plaisance's supervisor testified.
The C.E. testified that Ms. Ariatti is the primary caretaker and an excellent mother.
*1244 As to Mr. Plaisance, she found that there is a positive, secure attachment and a loving relationship between father and son, and that he is capable of parenting his son. During a meeting with the C.E., both parents acknowledged that the child needs both parents in his life. The C.E. recommended joint custody, with Ms. Ariatti as the domiciliary parent with whom the child should primarily reside during the week. With regard to schooling, however, the C.E. recommended that if the parties cannot agree on a school, then Mr. Plaisance should make the decision. The C.E. made this recommendation because Ms. Ariatti was clear that if she made the decision, she would choose a school in St. Bernard, which would be exceedingly inconvenient for the father, while Mr. Plaisance indicated he would choose one that is equidistant. The C.E. also recommended that if the parties cannot agree as to which extracurricular activities the child should participate in, the child should not be allowed to participate. She explained that she generally makes this recommendation in hopes that parents realize they are depriving their child of participating in extracurricular activities and will find a way to allow the child to participate in some extracurricular activities.
According to the C.E.'s testimony, she advised Ms. Ariatti that during exchanges with Mr. Plaisance, she should not engage in protracted good-byes. She testified that she was aware of the exchange of the child involving the parties and Ms. Ariatti's father, which resulted in a violent altercation between Mr. Plaisance and Ms. Ariatti's father. The C.E. testified that this situation could have likely been avoided if Ms. Ariatti had not engaged in a protracted good-bye with the child. She further testified that there was not anything to indicate Mr. Plaisance has a history of abuse.
Ms. Ariatti testified that she has concerns regarding whether Mr. Plaisance can properly care for their child. Specifically she testified that Mr. Plaisance (1) does not give the child his medicine as prescribed; (2) left a peanut product in the child's Easter basket when he has a peanut allergy ; (3) is verbally abusive to her; (4) left a loaded a loaded gun on a bedside table; and (5) missed several scheduled visits. As to schooling, Ms. Ariatti testified that she has concerns about the child's current school because not all teachers are state certified and she would prefer to send him to Joe Davies Elementary School in St. Bernard Parish, which is a Grade A school and equivalent to a Jefferson Parish magnet school.
Mr. Plaisance testified that he has a loving relationship with his child and has no concerns about taking care of him. He stated that he does not get enough time with the child and would like equal time with him. Mr. Plaisance typically works from 8:30 a.m. to 4:30 p.m., travels occasionally for work, has a great deal of flexibility and can sometimes work from home. As to choosing a school for their child, Mr. Plaisance researched schools based on the C.E.'s recommendations and found four schools that were approximately equidistant between his and Ms. Ariatti's residence. As to extracurricular activities, he would like to coach and participate in these activities with his child and believes that participation at a playground equidistant between the parties would be best. Mr. Plaisance also testified that he has removed all firearms from his home, that he knows how to administer the child's medicine and gives the medicine to him. As to missing scheduled visits, Mr. Plaisance testified that these occurred due to work, some personal activities, and on one occasion, because the child was ill and the parties agreed it would be in his best interest to stay with Ms. Ariatti to avoid additional unnecessary traveling back and forth at that time.
*1245 As to the altercation with Ms. Ariatti's father, Mr. Plaisance testified that on December 22, 2016, during the exchange of the child, he and Ms. Ariatti started arguing because she reneged at the last minute on the number of nights he would have the child. Ms. Ariatti's father videotaped the exchange of the child. While the parties were arguing, Ms. Ariatti apparently began to unbuckle the child as Mr. Plaisance started to slowly back up with Ms. Ariatti walking beside the car. Mr. Plaisance stopped and walked around the vehicle to Ms. Ariatti. At this point, Ms. Ariatti's father stormed out of the house and an argument between him and Mr. Plaisance ensued. During this exchange, Ms. Ariatti's father dared Mr. Plaisance to hit him multiple times, and Mr. Plaisance asked Ms. Ariatti's father to get away from him multiple times. The dispute escalated, and Mr. Plaisance struck Ms. Ariatti's father in the jaw.
The Trial Court's Judgment
In his judgment, the trial court adopted the C.E.'s recommendations and ruled the parties shall have joint custody of the minor child, with the mother being designated as the domiciliary parent except as to the choice of school. In this regard, the trial court ordered that if the parties cannot agree on a school, the choice should be made by the father, and that the school should either be equidistant between the parents' home or the child should remain at his current school. In addition, if the parents cannot agree on extracurricular activities for the child, the child will not be allowed to participate. The parties were also ordered to enroll in co-parenting classes, and that if after six (6) months, the parties find this unsuccessful, the trial court reserved the option to appoint a Parenting Coordinator upon the motion of either party.
The trial court also specifically found that (1) the child loves both parents and the mother's actions show an attempt to separate the son from the father; (2) the mother is calculating and tries to provoke aggressive behavior from the father and the father takes the bait and responds inappropriately; and (3) the father needs to learn to communicate civilly with the mother and live up to his responsibility as a parent.
ASSIGNMENTS OF ERROR
Appellant presents the following assignments of error. She asserts that the trial court erred in (1) granting equal physical custody of the minor child; (2) not finding Mr. Plaisance has a history of perpetuating domestic violence so as to disqualify him from joint custody; (3) granting Mr. Plaisance the right to make educational decisions for the child if the parties cannot agree; (4) ordering that the child could not participate in any extracurricular activities to which both parents did not agree; (5) denying her petition for protection from abuse; (6) refusing to hear testimony from an ex-girlfriend of Mr. Plaisance regarding alleged stalking and the officer who investigated the alleged stalking; and (7) not rendering a meaningful joint custody implementation plan.
Assignment of Error One
Appellant asserts that the trial court erred in ordering joint custody of the child because it is not feasible nor in the best interest of the child. On appellate review, the trial court's custody determination is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion. Martinez v. Lagos, 13-887 (La. App. 5 Cir. 05/21/14), 142 So.3d 231, 234 ; citing Martin v. Martin, 11-1496 (La. App. 3 Cir. 5/16/12), 89 So.3d 526 ; Bridges v. Bridges, 09-742 (La. App. 5 Cir. 2/9/10), 33 So.3d 914, 918. An appellate court cannot substitute its own findings for that of the trial court. Martinez, 142 So.3d at 234. The trier of fact is in a superior *1246 position to observe the nuances of demeanor, evidence not revealed in a record, and is not disadvantaged by the review of a cold record. Id.
Louisiana law provides that custody of a child shall be awarded based on the best interest of the child. La. C.C. art. 131. La. C.C. art. 132 states that if the parties cannot agree who is to have custody or the parties' agreement is not in the best interest of the child, the court shall award custody to the parents jointly. This article further states that if there is clear and convincing evidence that it is in the best interest of the child for one parent to have custody, then the court shall award custody to that parent.
La. C.C. art. 134 sets out twelve non-exclusive factors for the court to consider in awarding custody. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. Martinez, 142 So.3d at 234 ; citing Robertson v. Robertson, 10-926 (La. App. 5 Cir. 4/26/11), 64 So.3d 354, 362-363. Every child custody case must be viewed based on its own particular facts and relationships involved, with the goal of determining what is in the best interest of the child. Martinez, 142 So.3d at 237, citing Mulkey v. Mulkey, 12-2709 (La. 5/7/13), 118 So.3d 357, 367.
In rendering judgment in this case, the trial court adopted the recommendations of the C. E., who after meeting with the parents and other family members and visiting the child at each parents' home, recommended that the parties have joint custody of the minor child. The C.E. testified that both parents are capable of caring for their child, and that the child has a secure attachment and a loving relationship with both parents. Ms. Ariatti and Mr. Plaisance both acknowledged to the C.E. that the child needs both parents in his life.
Based on the testimony of the C.E. and the parents, we find both parents have the capacity, disposition, and the mental and physical health to give the child love and affection and to handle the education *1247 and rearing of this child, as well as to provide the child with a stable environment and all material needs. Mr. Plaisance lives in the family home and the C.E. testified that the child is comfortable with the father in his house. Ms. Ariatti lives with her parents in their home, which is also a safe and comfortable environment for the child.
Appellant asserts the trial court erred in awarding joint custody because the father (1) often gives up his visitation rights; (2) leaves the child with his parents instead of asking the mother to keep him (as per court order) when he goes out of town for work; (3) has left firearms out requiring a court order requiring him to not have firearms when the child is in his custody; (4) uses foul language and is verbally abusive to the mother; (5) cannot adequately handle the child's medical needs (the child has asthma and requires breathing treatments), and (6) is abusive. Ms. Ariatti also asserts she has a stronger bond with the child.
We find that none of these allegations warrant reversal of the joint custody judgment. The testimony indicates that Mr. Plaisance had to forfeit or change his visitation due to both work-related and personal reasons. In addition, the record does not support appellant's assertions that the father is abusive, or that he cannot adequately handle the child's medical needs. While the child may be more attached to his mother at this point, this is not a valid basis for sole custody as it is clearly in the best interest of the child for him to have a close relationship with both parents. The most effective means of accomplishing that is with a joint custody arrangement.
Based on the foregoing, the record does not indicate that the trial court abused its discretion in awarding joint custody. Considering the best interest of the child factors, and the lack of clear and convincing evidence that it would be in the best interest of the child for Ms. Ariatti to have sole custody, we find no error in the trial court's ruling.
Assignment of Error Two
Appellant asserts that the trial court erred in not finding Mr. Plaisance has a history of perpetuating domestic violence so as to disqualify him from joint custody. A trial court has wide discretion in determining the credibility of witnesses, and its factual determinations will not be disturbed on appeal absent a showing of manifest error. Hughes v. Talton, 06-319 (La. App. 5 Cir. 11/14/06), 947 So.2d 735, writ denied, 06-2969 (La. 2/16/07), 949 So.2d 420.
The record does not contain evidence to support a finding that Mr. Plaisance has a history of domestic violence. Ms. Ariatti never made allegations of domestic abuse prior to her separation from Mr. Plaisance and filing the petition for protection. There is no evidence that Mr. Plaisance has harmed Ms. Ariatti or the child.
In support of her assertion of domestic violence, appellant relies on the events that occurred on March 8, 2016, when she packed up her and the child's belongings and moved to her parents' house. While the testimony is contradictory, that evening, Ms. Ariatti told the police that the parties' were having a disagreement about relationship problems and made no allegations of abuse or injury. Based on the testimony, the incident occurred when Mr. Plaisance was sitting on the couch, and Ms. Ariatti was standing over him and yelling at him, a few inches from his face. Ms. Ariatti confirmed this in her testimony. Mr. Plaisance grabbed her wrists and stood up to push her away from him. Ms. Ariatti asserts that Mr. Plaisance grabbed hangers with clothing and threw them at her, hitting her and the child. According to *1248 Mr. Plaisance, however, he dropped the clothing into Ms. Ariatti's suitcase.
Ms. Ariatti also argues that the altercation between her father and Mr. Plaisance supports her assertion that Mr. Plaisance has a history of domestic violence. As the trial court concluded, the record indicates that Ms. Ariatti and her father facilitated the altercation while videotaping the exchange of the child, informing Mr. Plaisance on camera that he would not have the child for two nights as agreed, and engaging in a lengthy good-bye with the child. The evidence showed that Mr. Plaisance told Ms. Ariatti's father to get away from him multiple times, but that he continued to provoke Mr. Plaisance and dared him multiple times to hit him. Considering the testimony on this incident, particularly these facts, we find no support for appellant's assertion that Mr. Plaisance has a history of domestic violence.
Louisiana courts have held that the definition of domestic abuse in La. R.S. 46:2132(3) does not include nonphysical acts, such as general harassment and family arguments, if those acts do not rise to the level of physical abuse in violation of the criminal code, or an offense against a person. Lee v. Smith, 08-455 (La. App. 5 Cir. 12/16/08), 4 So.3d 100, 106. Physical abuse would include an act involving the intentional use of force or violence. See La. R.S. 14:35(3). While this Court in no way condones negative physical contact between parties engaged in a family argument, based on the record before us, we find the trial court did not abuse his discretion in determining that the incidents testified to do not rise to a level constituting domestic violence as contemplated under La. R.S. 46:2132(3). Moreover, our review of the record convinces us that the trial judge and the commissioner, who were in a superior position to observe the parties' demeanor and mannerisms, were thorough in their deliberations. Given the parties' conflicting testimony regarding the events requiring the trial court and commissioner to make credibility determinations, we cannot say the trial court's findings on this issue were manifestly erroneous. This assignment is without error.
Assignment of Error Three
Appellant asserts the trial court erred in granting Mr. Plaisance the right to make educational decisions for the child if the parties cannot agree. The court ordered that if the parties cannot agree on a school, the choice should be made by the father, and that the school should either be equidistant between the parents' home or he should remain at St. Christopher (his current school).
While the trial court gave the father the final decision regarding the choice of school, the judgment states that the school should either be equidistant between the parents' home or he should remain at his current school, St. Christopher. Thus, the father must choose a school that is reasonably located for both parents. Based on the testimony, if Ms. Ariatti was given the authority to choose, she would choose a school in St. Bernard, an extremely inconvenient option for the father.
Given the limiting language of the judgment requiring that the school choice be equidistant between the parents' residences or remain his current school, we find no abuse of discretion in the trial court's ruling.
Assignment of Error Four
Appellant asserts the trial court erred in ordering that the child would not be allowed to participate in extracurricular activities if the parties cannot agree. The trial court made this ruling part of the judgment based on the C.E.'s recommendation.
Ms. Ariatti has indicated she would like to register the child for activities in St.
*1249 Bernard, but asserts that Mr. Plaisance has objected because it would be inconvenient when he has the child as he lives in Marrero. The C.E. testified that she often recommends not allowing the child to participate in extracurricular activities if the parents cannot agree, in hopes that the parents will find some resolution rather than preventing the child from participating in such activities. Given that the child is only four years old and in light of the trial court's order that the parents enroll in co-parenting classes, we do not find the trial court's order regarding extracurricular activities is manifestly erroneous or an abuse of its vast discretion. Considering many of the custody issues have been resolved and there is a judgment in place, we believe it is in the child's best interest to give the parents an opportunity to cooperate regarding the child's extracurricular activities, as per the trial court's order, and allow time for the parents to resolve this issue on their own. If they cannot, they can seek modification from the trial court. Our standard of review does not allow this Court to substitute our judgment if the record supports the trial court's findings. We therefore decline to disturb the judgment on this issue.
Assignment of Error Five
Appellant asserts that the trial court erred in dismissing her petition for protection. Appellate courts review domestic protective orders for abuse of discretion. Dufresne v. Dufresne, 08-215, 08-216 (La. App. 5 Cir. 9/16/08), 992 So.2d 579, 586, writ denied, 08-2843 (La. 12/17/08), 996 So.2d 1123.
At the trial court hearing on the petition for protection, the trial court stated that it was only going to permit Ms. Ariatti to present new evidence and testimony, other than that which had already been presented before the hearing officer. Appellant asserts she was entitled to a de novo trial on the petition for protection before the trial court.[2]
Our review of the judgment and the transcript of the trial court proceedings, indicates that, as a practical matter, the trial court gave appellant's petition for protection de novo consideration. There is no indication in the judgment or from the trial court's comments that the court gave more weight to the commissioner's ruling than the actual testimony and evidence presented in making its determination. Moreover, the transcript of the hearing before the domestic commissioner was admitted into evidence without objection from counsel, and the trial court stated that it reviewed the transcript in making its determination. Thus, we find the trial court considered all of the evidence in reaching its conclusion as to whether Ms. Ariatti had carried her burden of establishing domestic abuse.
Pursuant to La. C.C.P. art. 1631, the "court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial so that justice is done." In doing so, the "trial judge has great discretion in conducting the manner and fashion in which the trial is run."
*1250 Tracy v. Jefferson Parish Through Dept. of Public Works, 523 So.2d 266, 274 (La. App. 5th Cir. 1988). In addition to reviewing the transcript, though the trial court initially ruled that it would only consider "new" evidence, the record reveals that the trial court actually gave wide latitude to Ms. Ariatti during her testimony, allowing her to discuss things she previously testified to during the prior hearing with the domestic commissioner. Ms. Ariatti had the opportunity to call additional relevant witnesses, but chose not to. Having considered the record as a whole, the lack of evidence to support appellant's petition for protection, and considering the particular facts of this case, we find that it was within the discretion of the trial court to accept the transcript of the proceeding before the commissioner instead of recalling all of the witnesses to re-testify.
Further, based on our review, we find the trial court's dismissal of the petition for protection is supported by the record. Ms. Ariatti first asserted that Mr. Plaisance acted aggressively towards her and the child the day after they separated. Her petition is based on two alleged incidents, which occurred on the evening she initiated the separation during what appears to have been a family argument. On the evening in question, Ms. Ariatti called the police but at the time made no assertions of any abuse and told police officers no one was harmed. Moreover, Ms. Ariatti advised the police that the parties were having a disagreement about relationship problems. As discussed supra in assignment of error two, the evidence regarding the incidents is contradictory and there are no other alleged instances of abuse. Thus, considering the record evidence in its entirety and keeping in mind the trial court's vast discretion in these matters, we find no error in the trial court's dismissal of the petition for protection.
Assignment of Error Six
Appellant asserts the trial court erred in refusing to hear testimony from a previous girlfriend of Mr. Plaisance that he allegedly stalked and harassed her. A trial court is vested with vast discretion in controlling the presentation of evidence, including the authority to determine the admissibility of witnesses' testimony. LeBlanc v. Cont'l Grain Co., 95-813 (La. App. 5 Cir. 3/13/96), 672 So.2d 951, 958.
The trial court refused to hear the testimony of Mr. Plaisance's ex-girlfriend regarding stalking and harassment because the alleged incident occurred approximately nine years ago. Mr. Plaisance was not convicted of any crime and the district attorney's office refused the charges. We agree that this testimony is not relevant to the present matter, particularly given that the alleged incident occurred nine years ago. Thus, Ms. Ariatti has not established that the trial court abused his discretion by disallowing this testimony.
Assignment of Error Seven
Appellant asserts the trial court erred in failing to make a meaningful joint custody implementation plan. Specifically, appellant complains that the judgment does not state when custodial times start and/or end; does not give either parent an entire weekend; requires the child to sleep in a different house every two nights during the week; and does not indicate how to handle summer care. The appellee acknowledges that the implementation plan has some vague and/or incomplete elements, but asserts that the parties should attempt to resolve these issues amongst themselves and if they are unable to do so, they can proceed with addressing those issues before the court.
In the judgment, the trial court ordered the parties to enroll in co-parenting classes, and that, if after six months, the parties are unsuccessful, the court may *1251 appoint a Parenting Coordinator upon motion of either party. Given this, we believe it is reasonable to give the parties an opportunity to resolve some of these issues on their own. If they continue to have difficulty co-parenting, they may return to the court and seek resolution there. In this regard, it is important to acknowledge that the trial court has much discretion in awarding and implementing child custody awards. Swope v. Swope, 521 So.2d 656, 659 (La. App. 1st Cir. 1988). Thus, at this point, we find no reason to amend the judgment or remand this matter.
Conclusion
For the reasons stated above, we affirm the trial court's judgment.
AFFIRMED

The C.E.'s evaluation included meetings with the parties, both individually and collectively, and with both the maternal and paternal grandmothers. Both parties completed Parent and Child Background Questionnaires. Dr. van Beyer also completed a home study of both Mr. Plaisance's home and Ms. Ariatti's parents' home (where she resides) with the child present.

Appellee's counsel asserts that the trial court properly refused to allow all the testimony and evidence to be presented again under La. R.S. 13:717 F (4)(c), which states "The judge may decide the objection based on the record of the proceedings or may receive further evidence and rule based on that evidence, together with the prior evidence, or may recommit the matter to the commissioner with instructions." Under the language of the statute, however, this appears to be limited to the implementation of interim child support and custody orders. La. R.S. 13:717 F (4).